[No. C054130. Third Dist. Nov. 13, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD YOUNG, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the introduction, Factual and Procedural Background, part I. of the Discussion, and the Disposition of this opinion are certified for publication.

## Counsel

John Hardesty, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, J. Robert Jibson and Carlos A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BUTZ, J.**—Following a jury trial, defendant Edward Young was convicted of second degree robbery. (Pen. Code, § 211.)[1] In bifurcated proceedings, the court found true the allegations that defendant had suffered three prior strike convictions (§§ 1170.12, subd. (b), 667, subd. (d)), all of which also qualified as serious felonies under the five-year enhancement statute (§ 667, subd. (a)). The court granted the People's motion to strike prior convictions (§ 667, subd. (f)) and sentenced defendant to an aggregate term of 25 years to life in state prison. Defendant appeals his conviction, contending the trial court had no authority to reopen closing arguments after the jury declared itself

---

[1] Undesignated statutory references are to the Penal Code.

deadlocked; the trial court abused its discretion in allowing a readback of defense counsel's second closing argument; defendant received ineffective assistance of counsel; and the cumulative result of these errors deprived him of his due process rights. We shall affirm the judgment with a modification to the abstract of judgment on the number of days of actual custody credit.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 12, 2005, at approximately 2:00 a.m., Christina Lopez and Maria Valdez were working as cashiers at the USA gas station in Lodi. Two men entered the store, defendant and his friend, Eli Hayes (whom he later identified as his codefendant). Hayes approached Lopez at the cash register, pulled a gun and threatened to shoot her if she did not give him money. Lopez gave him money from her register. Defendant went to Valdez, pulled a gun,[2] and demanded she give him money. When Valdez could not open her register, defendant raised his arm as though he was going to hit her. While Valdez was trying to open her cash register, she was also activating the alarm. Valdez realized defendant's weapon was not real, because she could see the "point was crushed." Nonetheless, she was frightened and scared. After getting money from Lopez, Hayes and defendant left the store and went their separate ways.

Responding to a dispatch, Lodi Police Officer Kevin Kent arrived at the USA gas station shortly after the robbery. He took statements from Lopez and Valdez, got general descriptions of the perpetrators and watched a video surveillance tape. He also later received still-frame photographs produced from another surveillance tape.[3] Officer Kent did not see either Hayes or defendant with a gun on the tape.

Officer Dale Eubanks, who had known defendant and his family for a number of years, saw the still-frame photographs and recognized one of the robbers as defendant. About a week after the robbery, Eubanks was riding with Detective Nick Rafic when he saw defendant in front of a local market. Defendant was wearing clothes that were either the same or very similar to those depicted in the photographs from the robbery. Eubanks and Rafic pursued defendant, but he fled the scene and they were unable to find him.

---

[2] Defendant actually used a plastic or "simulated" BB gun.

[3] Apparently, there were two surveillance tapes, one taken by the in-store system and a second by an independent system. The still-frame photographs were taken from the independent surveillance system video.

Detective Rafic was assigned to follow up on the investigation of the case. As part of that investigative process, he procured a prior booking photo of defendant.[4] Using that photograph, he prepared a photo lineup. He showed the photo lineup to both Lopez and Valdez. Each identified defendant as one of the robbers. However, Lopez expressed some uncertainty.

Detective Rafic then learned defendant was at Calaveras County Jail, so he went there to speak with defendant. He told defendant he was there investigating the robbery. Defendant indicated he was aware of the robbery and, after being "Mirandized," gave Rafic a statement.

Defendant stated he and Hayes had decided to rob the gas station. He made it clear to Hayes he did not want anyone to get hurt. He used a plastic or simulated BB gun, and Hayes had a knife. When Hayes got the money, they left the store and met up later at an abandoned house. In counting the proceeds, they had about $200. Hayes kept the money and would not share it with defendant. But, Hayes used the money to buy food and drugs, which he shared with defendant. Defendant indicated he was sorry for his actions and particularly sorry he had frightened Lopez and Valdez. Despite his remorse, defendant was not concerned about discussing the robbery, because he knew "he [could] plead insanity," and specifically used the phrase "5150."[5] Detective Rafic explained this reference as "they use numbers based on some of these—you know, the mentally unstable." Rafic's interview with defendant was not recorded in any way. Rafic acknowledged he was familiar with defendant and knew him to be a drug user.

After the presentation of evidence, the jury was instructed. The instructions included the lesser included offenses of attempted robbery, petty theft and attempted petty theft. The instructions also included liability under an aiding and abetting theory.[6]

Jury deliberations commenced on June 2, 2006. The next court day, the jury asked to see the surveillance tape and asked for a readback of Lopez's

---

[4] Regarding the prior booking photo, Detective Rafic offered the unsolicited clarification that "anybody who gets booked in the state, their photo becomes available to a police officer—for viewing for prior booking arrests."

[5] Presumably, this was a reference to Welfare and Institutions Code section 5150, which allows for a 72-hour involuntary commitment for those determined to be dangerous to themselves or others.

[6] Defense counsel's objection to the instructions on liability premised on an aiding and abetting theory was overruled.

testimony. The next day, the jury sent a note stating it was deadlocked and had been since the previous morning. The foreperson indicated it was unclear whether "there's 100 percent understanding from everyone in the box how—from the lesser—how the lesser charges work with the robbery."

The court directed the jury back to the instructions and the foreperson indicated the instructions had been read "over and over and over" and were not especially helpful. The foreperson advised the court the problem appeared to be a disagreement on "the perception of the facts" and did not believe any additional time would be helpful in reaching a verdict. The rest of the jury agreed that neither further time nor instruction would be helpful. The court asked about the split on the last vote, and was advised it was "three numbers," "ten—to one—to one," indicating their level of disagreement. The court asked if further argument from the attorneys might be helpful. Although some of the jurors did not think it would be, others did. Accordingly, the court reopened closing argument for both parties. Neither party objected.

The prosecutor focused his second closing argument on liability under either a conspiracy theory or an aiding and abetting theory, theories which had been originally instructed upon but which he had not argued in his original closing argument. Defense counsel continued to focus his argument on the lesser included offenses.

The jury resumed deliberations. A short time later, it asked for a readback of defense counsel's second closing argument. Neither party objected. The court readvised the jury that statements and arguments of the attorneys are not evidence and defense counsel's argument was reread to the jury. The jury continued deliberations for over an hour, broke for lunch, reconvened, and then deliberated for another hour, at which time they had reached a verdict of guilty as to count 1 (§ 211).

## DISCUSSION

### I. The Court Was Authorized to Reopen Closing Argument to Assist the Jury in Overcoming a Deadlock

Defendant contends the trial court was without authority to reopen closing argument while the jury was deliberating. He contends doing so resulted in a

miscarriage of justice, violated his due process rights, and constituted improper jury coercion. We are not persuaded.

Initially, we note that despite being specifically asked if there was any objection, defendant did not object to having the case reopened to present additional closing argument to the jury. That failure to object forfeited the issue for appeal. (See *People v. Jennings* (1991) 53 Cal.3d 334, 383–384 [279 Cal.Rptr. 780, 807 P.2d 1009]; *People v. Bishop* (1996) 44 Cal.App.4th 220, 235 [51 Cal.Rptr.2d 629].) Perhaps anticipating this outcome, defendant argues alternatively that counsel's failure to object was ineffective assistance of counsel. Because we find defendant's claim has no merit, counsel's failure to object did not render his representation ineffective.

Defendant specifically argues, "[t]here appears to be no statute that would authorize the court's action in allowing the prosecution to reargue the case as a means of overcoming jury deadlock." Defendant is mistaken.

There is authority guiding the trial court's actions with respect to the order of a jury trial and its obligations upon being faced with a deadlocked jury. Section 1093 delineates the order that trial procedures shall follow, including the direction that the prosecutor and defense counsel may argue the case to the court and jury upon the close of evidence. (§ 1093, subd. (e).) Section 1094 grants the trial court broad discretion to depart from the order specified in section 1093.[7] Section 1140 entitles the trial court to ascertain whether there is a reasonable probability a jury deadlock might be broken. (Cf. *People v. Miller* (1990) 50 Cal.3d 954, 993–994 [269 Cal.Rptr. 492, 790 P.2d 1289]; *People v. Sheldon* (1989) 48 Cal.3d 935, 959 [258 Cal.Rptr. 242, 771 P.2d 1330].) When the court is faced with a deadlocked jury, it must proceed carefully, lest its actions be viewed as coercive. (See *People v. Rodriguez* (1986) 42 Cal.3d 730, 775 [230 Cal.Rptr. 667, 726 P.2d 113].) At the same time, when faced with questions from the jury, including that they have reached an impasse, "a court must do more than figuratively throw up its hands and tell the jury it cannot help. It must at least *consider* how it can

---

[7] Relying on the authority conferred on the court by sections 1093 and 1094, the Judicial Council recently clarified the existing authority of the court and enacted California Rules of Court, rule 2.1036. This rule expressly states that after a jury reports it has reached an impasse in deliberations, if the trial judge determines further action may assist the jury in reaching a verdict, the trial judge may "[p]ermit attorneys to make additional closing arguments." (Rule 2.1036(b)(3).) This rule became effective January 1, 2007. (Judicial Council of Cal., Admin. Off. of Cts., Rep. on Jury Rule Proposals [to adopt Cal. Rules of Court, rules 2.1032, 2.1033, 2.1034, 2.1035 & 2.1036] (Nov. 28, 2006) pp. 10, 17.)

best aid the jury." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97 [279 Cal.Rptr. 276, 806 P.2d 1311].)

■ Here, there were no remarks by the court that could have been viewed as coercive. It did not urge the jurors to reach agreement. There were no coercive instructions given. Nor did any remarks from the court show a preference for a particular verdict. By asking if additional argument might be helpful, the court did no more than ascertain the reasonable probability of the deadlock being broken and a means by which that might be accomplished. When some of the jurors agreed additional argument might help them in reaching a verdict, it was not inappropriate for the court to seek to offer that alternative to aid the jury. Further, the procedure was neutral, giving each side a brief opportunity to argue. We see no impropriety in the court's exercise of its discretion.

The determination that the court acted within its inherent authority and did not abuse its discretion necessarily resolves defendant's claim that his trial counsel was ineffective for failing to object to further closing argument.

■ To establish ineffective assistance of counsel, a defendant must show " ' "not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice." ' [Citation.] Prejudice occurs only if the record demonstrates 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Lucero* (2000) 23 Cal.4th 692, 728 [97 Cal.Rptr.2d 871, 3 P.3d 248].)

Here, defendant has not demonstrated deficient performance by counsel. The procedure implemented by the court was well within its authority. It was not an "unprofessional error" for counsel not to object to an authorized procedure, nor did this lack of objection affect the outcome of these proceedings.

**II.–V.***

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1165.

## DISPOSITION

The judgment is modified to provide for a 10 percent ($500) administrative surcharge under section 1202.4, subdivision (*l*), as correctly indicated on the abstract of judgment. The trial court is directed to prepare an amended abstract of judgment that reflects the correction of 326 actual days of custody credit, and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

Sims, Acting P. J., and Hull, J., concurred.

A petition for a rehearing was denied November 27, 2007, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 20, 2008, S159016.