Filed 7/9/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GEORGE MANUEL SALAZAR,<br><br>    Defendant and Appellant. | F066025<br><br>(Super. Ct. No. BF140620B)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Leanne Le Mon and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted George Manuel Salazar of carjacking. Salazar claims the trial court erred when it permitted the parties to present additional argument after the jury indicated it was having difficulty reaching a verdict. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

### *The Charges*

The information charged Salazar and codefendant Pedro Vargas Marquez with (1) carjacking, in violation of Penal Code section 215, subdivision (a),[1] and (2) receiving stolen property (the vehicle), in violation of section 496d, subdivision (a). Marquez also was charged with willful evasion of a police officer, in violation of Vehicle Code section 2800.2. The information also alleged Salazar had suffered a prior strike conviction within the meaning of section 667, subdivisions (b) through (i), and had served two prior prison terms within the meaning of section 667.5, subdivision (b).

### *The Testimony*

The victim, Stephanie Villatoro, drove to the house of her friend, Priscilla Franco, to spend the evening with her. The two were visiting when Salazar and Marquez approached Franco. Marquez lived nearby and Franco apparently was acquainted with him. The four decided to spend some time together. At trial Villatoro identified Marquez but could not identify Salazar. Villatoro had never met Marquez or Salazar before that night, but she had seen Marquez in the neighborhood on prior occasions when she had gone to visit Franco.

The four went to a grocery store where Marquez and Salazar bought some liquor. They then returned to the house believed by Villatoro to be where Marquez lived and sat in Villatoro's vehicle. Villatoro drank a sip of the liquor and smoked some marijuana supplied by Marquez.

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

Villatoro asked the men to get out of the vehicle so she could go home, but they refused because they did not want the girls to leave. Eventually, Franco got out of the vehicle and walked the short distance to her house. Villatoro told the men several times she wanted to go home, but they would not leave the vehicle. Salazar then exited the vehicle and told Villatoro to move to the passenger's seat. Villatoro refused. Salazar reached into his waistband as if he had a weapon and tried to remove Villatoro from the vehicle. Marquez also was attempting to help remove Villatoro from the vehicle. Eventually, Villatoro jumped out of the vehicle because she feared for her life. Marquez got into the driver's seat and Salazar got into the passenger's seat. Before the vehicle drove off, Villatoro was able to grab her purse.

After the vehicle left, Villatoro called Franco. She attempted to call the phone number given to her by Marquez, but the person who answered stated they did not know Marquez. Villatoro and Franco also knocked on the door of the house in which they thought Marquez lived, but they did not receive any help from the occupants. When her attempts to retrieve her vehicle without involving the police failed, Villatoro called the police. The police took Villatoro to the location where her vehicle had been recovered. She identified Marquez and Salazar as the two men who had stolen her vehicle.

Franco's testimony was very similar to Villatoro's testimony in all significant respects. Franco, however, identified both Marquez and Salazar in the field identification lineup and in the courtroom.[2]

At the time of the incident, Dustin Downey was a sergeant with the Kern County Sheriff's Office. On the night in question, he was driving an unmarked vehicle and waiting to make a left turn at a stop light. When the light to make a left turn changed to

---

[2]Bakersfield Police Officer Christopher Peck, who transported Franco to the field identification and was with her when the suspects were displayed to her, confirmed she identified both Marquez and Salazar.

green, he began his turn but stopped because he saw an oncoming vehicle traveling at a very high rate of speed. It appeared to Downey a collision would occur if he completed the left turn. The vehicle proceeded through the intersection against the red light.

As the vehicle passed, Downey saw the vehicle matched the description of Villatoro's stolen vehicle. He made a U-turn and began pursuit using his lights and siren. The vehicle turned down an alley and turned off its headlights. Downey saw the vehicle hit two railroad ties that were lying across the alley. After hitting the railroad ties, the vehicle slowed down considerably. Two other marked patrol vehicles from the sheriff's office joined the pursuit, including Deputy Sheriff Jason Colbert. Downey ordered Colbert to become the primary pursuit vehicle and Downey assumed a supervisory role.

Colbert testified he joined the pursuit of Villatoro's vehicle in a marked sheriff's vehicle with his lights and siren on. Although the vehicle being pursued did not exceed the speed limit, it committed numerous vehicle code violations as the driver failed to stop. After an approximate five-minute pursuit, the vehicle stopped and Marquez and Salazar were arrested without incident. Marquez was driving the vehicle.

Bakersfield Police Officer Frederick Martinez responded to Villatoro's report of a stolen vehicle. While interviewing Villatoro, Martinez learned from a radio broadcast that the vehicle had been recovered. He drove Villatoro to the location where the vehicle was recovered, and she identified both Marquez and Salazar in a field identification lineup.

Martinez pointed out that Salazar appeared differently in court than he did on the night of his arrest. His booking photo was introduced to explain the change in appearance.

The prosecutor argued in closing that the only evidence before the jury proved each element of the crime. The defense argued, in essence, that Villatoro was not ready to go home when Franco left, and she loaned her vehicle to Marquez and Salazar so they could obtain more liquor and more marijuana. She made this decision, according to the

4.

defense, because she was so intoxicated she could not drive herself. When Marquez and Salazar failed to return promptly with her vehicle, she panicked and called the police to report the vehicle stolen. In rebuttal, the prosecution explained why the evidence and common sense did not support the defense theory.

### *Verdict and Sentence*

The jury convicted Salazar of carjacking and found Marquez guilty of felony evading a police officer. The jury could not reach a verdict as to the carjacking count against Marquez.

After Salazar waived his right to a jury, the trial court found the prior conviction allegations true.

The trial court sentenced Salazar to the upper term of nine years, and then doubled the term because of the strike prior, for a total term before enhancements of 18 years. In addition, the trial court sentenced Salazar to a two-year enhancement pursuant to section 667.5, subdivision (b), for a total term of 20 years.

## DISCUSSION

Salazar contends the trial court erred by (1) permitting additional argument without ensuring the jury was at an impasse, (2) limiting the scope of the argument, and (3) permitting the prosecutor to have a rebuttal argument.

### *Facts*

Closing arguments ended late in the day on August 15, 2012. The jury deliberated for less than 15 minutes before it was dismissed for the day. The jury deliberated a full day on August 16, making a request in the morning to have the court reporter read to them the testimony of Villatoro and Franco. After deliberating for approximately 60 minutes on August 17, the jury sent a note to the trial court that stated it was "having a problem coming to a verdict on count 1. If the Jury is Hung on count 1, can the Jury rule on count 2?"

5.

After consulting with the attorneys and securing their agreement, the trial court informed the jury it must reach a verdict on count 1 before it could deliberate on count 2. The trial court then read to the jury the essence of California Rules of Court, rule 2.1036,[3] which advised the jury of various further actions the trial court could take to assist the jury in reaching a verdict. One option was to permit the attorneys to make further closing arguments.

Approximately one hour later, the jury sent another note to the trial court that stated, "We would like to hear the closing Argument again from the Attorneys, with regards to Believability of a witness, of S. Villatoro." The trial court informed the attorneys it intended to permit additional argument, with the prosecutor having the opening argument and a rebuttal argument.

Defense counsel objected to this procedure, arguing Salazar was not receiving a fair trial and a mistrial should be declared. He also objected to the prosecutor being afforded a rebuttal argument. Finally, he suggested it was unclear if the jury was deadlocked, and the trial court should inquire into that issue before permitting additional closing arguments. The trial court overruled defense counsel's objection, concluding there was authority for the proposed procedure and there was sufficient evidence the jury was deadlocked from the notes and discussions with the jury foreperson. The jury returned to the courtroom and additional closing argument was had by each party, focusing on the issue identified by the jury.

Approximately 45 minutes after the additional argument was completed, the jury informed the trial court it had reached a verdict on count 1 for Salazar but was hung on count 1 for Marquez.

---

[3] All further references to rules are to the California Rules of Court.

*Analysis*

Salazar begins by claiming his right to due process was violated because of the trial court's actions. While Salazar has a constitutional right to due process of law, we fail to see how that right was implicated. Nor does Salazar provide any authority or argument that explains how his right to due process was violated. The only authority he cites is *People v. Gainer* (1977) 19 Cal.3d 835, 848, disapproved on other grounds in *People v. Valdez* (2012) 55 Cal.4th 82, 163, which stands for the proposition that Salazar had a due process right to the independent judgment of each juror. While this is a correct statement of the law, the failure to explain how the procedure used in this case somehow prevented a verdict based on the independent judgment of each juror renders this citation meaningless. The issue, as we see it, is whether the trial court erred in utilizing the procedure described above.

**Applicable Law**

We begin with the applicable law and the competing issues faced by the trial court. Section 1093 provides the trial shall proceed "in the following order, unless otherwise directed by the court." The order presented in the statute is (1) reading of the information and the defendant's plea, (2) opening statement by counsel for the people and the defendant, (3) presentation of evidence by the People, followed by presentation of evidence by the defendant, (4) any rebuttal testimony, (5) closing argument by counsel for the People, closing argument by counsel for the defendant, and rebuttal argument by counsel for the People, and (6) charging of the jury by the trial court.[4] (*Id.,* subds. (a)-

---

[4]Section 1093 states in full: "The jury having been impaneled and sworn, unless waived, the trial shall proceed in the following order, unless otherwise directed by the court: [¶] (a) If the accusatory pleading be for a felony, the clerk shall read it, and state the plea of the defendant to the jury, and in cases where it charges a previous conviction, and the defendant has confessed the same, the clerk in reading it shall omit therefrom all that relates to such previous conviction. In all other cases this formality may be dispensed with. [¶] (b) The district attorney, or other counsel for the people, may make

7.

(f).)  Section 1094 provides the trial court with discretion to depart from this order "for good reasons."**5**  Also relevant is section 1140, which provides the jury cannot be discharged after the case has been submitted to it until it has reached a verdict, or it "satisfactorily appears [to the trial court] that there is no reasonable probability that the jury can agree."**6**

---

an opening statement in support of the charge.  Whether or not the district attorney, or other counsel for the people, makes an opening statement, the defendant or his or her counsel may then make an opening statement, or may reserve the making of an opening statement until after introduction of the evidence in support of the charge.  [¶] (c) The district attorney, or other counsel for the people shall then offer the evidence in support of the charge.  The defendant or his or her counsel may then offer his or her evidence in support of the defense.  [¶] (d) The parties may then respectively offer rebutting testimony only, unless the court, for good reason, in furtherance of justice, permit[s] them to offer evidence upon their original case.  [¶] (e) When the evidence is concluded, unless the case is submitted on either side, or on both sides, without argument, the district attorney, or other counsel for the people, and counsel for the defendant, may argue the case to the court and jury; the district attorney, or other counsel for the people, opening the argument and having the right to close.  [¶] (f) The judge may then charge the jury, and shall do so on any points of law pertinent to the issue, if requested by either party; and the judge may state the testimony, and he or she may make such comment on the evidence and the testimony and credibility of any witness as in his or her opinion is necessary for the proper determination of the case and he or she may declare the law.  At the beginning of the trial or from time to time during the trial, and without any request from either party, the trial judge may give the jury such instructions on the law applicable to the case as the judge may deem necessary for their guidance on hearing the case.  Upon the jury retiring for deliberation, the court shall advise the jury of the availability of a written copy of the jury instructions.  The court may, at its discretion, provide the jury with a copy of the written instructions given.  However, if the jury requests the court to supply a copy of the written instructions, the court shall supply the jury with a copy."

**5**Section 1094 states in full:  "When the state of the pleadings requires it, or in any other case, for good reasons, and in the sound discretion of the court, the order prescribed in Section 1093 may be departed from."

**6**Section 1140 states in full:  "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes,

8.

The reason section 1140 ensures a jury deliberates until it has reached a verdict, unless it is unable to do so, is obvious. A jury trial that ends without a verdict results in the loss of judicial resources, the resources of the district attorney's office and the defense attorney (often the public defender), wastes the time invested by the jurors who have served on the jury, and prevents the defendant from achieving a resolution to the charges levied against him or her. For all of these reasons, trials should end in a verdict whenever possible. Accordingly, when a jury informs the trial court it has reached an impasse, the trial court "must do more than figuratively throw up its hands and tell the jury it cannot help. It must at least *consider* how it can best aid the jury." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.)

The desirability of a verdict in each trial does not provide the trial court with unlimited power to achieve this result. A defendant's right to receive a fair trial is a basic requirement of the Fourteenth Amendment's right to due process. (*Skilling v. United States* (2010) 561 U.S. 358, 378, citing *In re Murchison* (1955) 349 U.S. 133, 136.) The trial court must exercise its discretion to determine whether there is a reasonable probability the jury will reach a verdict without coercion of the jury and "to avoid displacing the jury's independent judgment 'in favor of considerations of compromise and expediency.' [Citation.]" (*People v. Miller* (1990) 50 Cal.3d 954, 994.) In other words, the trial court must act carefully to ensure whatever result is reached is a direct result of the deliberative process and is not influenced by the trial court.

In 2007 the Judicial Council enacted rule 2.1036 to provide tools for the trial court to use in assisting the jury to reach a verdict without influencing the jury. This rule contains two parts. First, "After a jury reports that it has reached an impasse in its deliberations, the trial judge may, in the presence of counsel, advise the jury of its duty to

---

or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree."

9.

decide the case based on the evidence while keeping an open mind and talking about the evidence with each other. The judge should ask the jury if it has specific concerns which, if resolved, might assist the jury in reaching a verdict." (Rule 2.1036(a).)

Second, "If the trial judge determines that further action might assist the jury in reaching a verdict, the judge may: [¶] (1) Give additional instructions; [¶] (2) Clarify previous instructions; [¶] (3) Permit attorneys to make additional closing arguments; or [¶] (4) Employ any combination of these measures." (Rule 2.1036(b).)

We have located only two cases that discuss rule 2.1036. Both parties cite *People v. Young* (2007) 156 Cal.App.4th 1165 (*Young*), which has similar facts. Young was charged with various crimes after he admitted participation in the robbery of a gas station. After two days of deliberations, the jury informed the trial court it was at an impasse and that there might be some confusion surrounding the lesser included offenses. In further discussions with the trial court, the jurors stated they had reviewed the instructions numerous times and did not find them helpful and stated their belief they could not reach a verdict. Some of the jurors responded affirmatively when the trial court asked if further argument from the attorneys would be helpful, while other jurors responded negatively. The trial court then permitted additional closing arguments, apparently only a single argument by each party. Later that day the jury reached a verdict. (*Id.* at p. 1170.)

Young argued the trial court violated his right to due process by permitting additional argument, and the trial court's actions constituted coercion. Citing the same code sections discussed *ante*, the appellate court disagreed. "Here, there were no remarks by the court that could have been viewed as coercive. It did not urge the jurors to reach agreement. There were no coercive instructions given. Nor did any remarks from the court show a preference for a particular verdict. By asking if additional argument might be helpful, the court did no more than ascertain the reasonable probability of the deadlock being broken and a means by which that might be accomplished. When some of the

10.

jurors agreed additional argument might help them in reaching a verdict, it was not inappropriate for the court to seek to offer that alternative to aid the jury. Further, the procedure was neutral, giving each side a brief opportunity to argue. We see no impropriety in the court's exercise of its discretion." (*Young, supra,* 156 Cal.App.4th at p. 1172.)

The trial in *Young* occurred before rule 2.1036 was enacted. In a footnote, however, the appellate court noted the rule permitted additional closing argument once the jury had reached an impasse and cited sections 1093 and 1094 as authority for the rule. (*Young, supra,* 156 Cal.App.4th at p. 1171, fn. 7.)

The other case cited by defendant is *People v. Ardoin* (2011) 196 Cal.App.4th 102. There, the defendant argued the trial court erred when it provided additional instructions once the jury indicated some confusion about the law. Citing several cases discussing section 1138, the appellate court found the trial court did not abuse its discretion. (*Ardoin,* at p. 128.) The appellate court also concluded, however, the trial court should have permitted the parties additional argument to address the new instructions. (*Id.* at p. 129.) In addition to citing numerous cases to support this conclusion, the appellate court stated in a footnote that "rule 2.1036 of the California Rules of Court expressly encourages the trial courts to clarify previous instructions or give additional instructions, and permit attorneys 'to make additional closing arguments,' if a jury has 'reached an impasse in its deliberations.'" (*Id.* at fn. 10.)

These two cases cite with approval rule 2.1036, for good reason. This rule provides direction to the trial court in an attempt to avoid a waste of resources. Moreover, the rule recognizes the need for impartiality while encouraging the jury to reach a verdict.

While rule 2.1036 does not state so expressly, it is apparent the trial court has discretion when choosing whether to resort to the tools provided and how to use those tools. The rule uses language typically associated with discretion (the trial court *may*

11.

advise the jury of its duty; if the trial court determines further action *might* assist the jury it *may* use the tools provided). The authority for rule 2.1036 is Penal Code sections 1093 and 1094. Section 1094 provides the trial court with discretion to deviate from the standard trial procedure set forth in section 1093 when required by the pleadings or for good reasons. Accordingly, we conclude the trial court has discretion to utilize the tools provided in rule 2.1036. We review the trial court's exercise of discretion for an abuse of discretion. (See, e.g., *People v. McDowell* (2012) 54 Cal.4th 395, 426.)

### Jury at Impasse

Salazar first argues the trial court informed the jury of the options available to assist them in reaching a verdict prematurely. He contends an impasse must exist before the jury can learn of these options. Salazar has not cited any authority for this argument, and nothing in rule 2.1036 prohibits the trial court from informing a jury of the available options to resolve an impasse before the jury has specifically declared an impasse. The trial court acted well within its right to control the trial proceedings when it informed the jury of these options in the event an impasse existed. (*People v. Engram* (2010) 50 Cal.4th 1131, 1146 (*Engram*).)

Salazar next claims the trial court failed to follow the procedure set forth in rule 2.1036. The rule is entitled "Assisting the jury at impasse," and the first sentence of subdivision (a) of the rule begins "After a jury reports that it has reached an impasse in its deliberations …." The obvious intent of this rule is to assist the jury in achieving a verdict, if possible, after it has reached an impasse.

The trial court in this case relied on subdivision (b) of rule 2.1036. While subdivision (b) does not specifically state that these options should be used after the jury has reached an impasse, the context of the rule leads to the conclusion these options are meant to be used when an impasse exists. Salazar argues the trial court erred because "no reasonable jurist could believe that an impasse existed."

12.

The trial court permitted additional closing argument only after it received both of the relevant notes. The first note strongly indicated the jury was at an impasse on count 1 and asked if it could instead proceed to count 2. It was after this note that the trial court informed the jury of its duty to reach a verdict based on the evidence if it was able to do so, and also informed the jury of the options available to assist the jury pursuant to rule 2.1036. In so informing the jury, the trial court specifically stated this information was used when "the jury has indicated or reported that they have reached an impasse in their deliberations, meaning that they feel they may not be able to reach a unanimous verdict as to a count." One hour after this exchange, the jury asked for additional argument by counsel.

The trial court did not abuse its discretion in concluding the jury had reached an impasse. The first note strongly indicated an impasse had been reached. The trial court then informed the jury of various options available to assist the jury *if an impasse had been reached*. One hour later the jury requested one of these options (additional argument), again strongly suggesting it had reached an impasse on count 1. While the trial court did not directly inquire if the jury had reached an impasse, the existence of an impasse was the only reasonable conclusion the trial court could reach on these facts. It did not err in thereafter permitting additional argument.

### Limitation of Argument

Salazar challenges the trial court's informing the jury to limit any requested argument to a specific topic. The trial court correctly noted, however, that simply requesting additional argument would be inefficient and a waste of resources. The attorneys would not know what issue was troubling the jury, and the jury likely would hear a rehash of the closing arguments already made, which was unlikely to provide any assistance to the jury. The trial court's limitation allowed the attorneys to focus on the issue troubling the jury, thus ensuring the attorneys an opportunity to provide assistance to the jury. There was no error.

13.

**Rebuttal Argument**

Salazar contends the trial court's decision to permit the prosecutor to have a rebuttal argument violated his right to due process. Once again, however, Salazar fails to provide any authority that would explain how his constitutional right to due process was violated. Instead, he attempts to analogize this trial to the penalty phase of a death penalty trial where additional argument is allowed. The authority cited by Salazar is *People v. Bandhauer* (1967) 66 Cal.2d 524 (*Bandhauer*).

The Supreme Court reversed Bandhauer's first degree murder conviction because of prosecutorial misconduct in closing argument. The court also addressed the issue of argument during the penalty phase of the trial. In prior opinions, the Supreme Court concluded the prosecutor should be allowed the opening and rebuttal argument during the penalty phase. (*Bandhauer, supra,* 66 Cal.2d at p. 530.) On Bandhauer's request, the Supreme Court reconsidered the earlier opinions and "concluded that the analogy to the trial on the issue of guilt should not control the practice on the issue of penalty. The prosecutor's burden of proving guilt beyond a reasonable doubt at the trial on the issue of guilt justifies his closing the argument as well as opening it. At the trial on the issue of penalty, however, neither side has the burden of proving that one or the other penalty is the proper one in the case at hand, and there is no logical reason to favor one side over the other in argument. Equal opportunity to argue is also consistent with the Legislature's strict neutrality in governing the jury's choice of penalty. [Citation.]" (*Id.* at pp. 530-531.)

Although we conclude *Bandhauer* is inapposite, if it had any possible application, it would support the trial court's decision here to permit the prosecutor a rebuttal argument after the jury requested additional argument. *Bandhauer* recognized it was appropriate for the prosecutor to have a rebuttal argument during the guilt phase of a trial. The jury requested additional argument during the guilt phase of Salazar's trial.

14.

Therefore, *Bandhauer* could be read to support the trial court's decision to permit the prosecutor a rebuttal argument.

*Bandhauer,* however, does not address the proper procedure to be used where additional argument is permitted to assist a jury that has reached an impasse. Nor do we feel section 1093, subdivision (e) necessarily is controlling ("the district attorney … opening the argument and having the right to close") in this situation, since this section does not address a request for additional argument. Without direct authority for the trial court to follow, we conclude the decision to allow the prosecutor a rebuttal argument is part of the trial court's general obligation to control the proceedings in its court. (*Engram, supra,* 50 Cal.4th at p. 1146.)

Here, the trial court did not abuse its discretion in permitting the prosecutor a rebuttal argument. The additional argument related to the guilt phase of the trial, during which the prosecutor bears the burden of proof beyond a reasonable doubt. Because the prosecution has the burden of proof, it is not unreasonable to conclude the prosecutor should be allowed to rebut the arguments of defense counsel.

Even if error occurred, Salazar cannot establish any prejudice as a result of the trial court's decision to permit the prosecutor a rebuttal argument. While the prosecutor's initial argument in this phase was lengthy, her rebuttal argument lasted less than two pages in the transcript and merely reinforced her theme that there was no logical explanation for Villatoro to fabricate her testimony. The prosecutor did not add anything new to her argument. Accordingly, any possible error was harmless beyond any possible doubt.

**DISPOSITION**

The judgment is affirmed.

_____
CORNELL, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
FRANSON, J.

16.