Filed 6/24/16  P. v. Dwiggins CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID JOSEPH DWIGGINS,<br><br>        Defendant and Appellant. | A144028<br><br>(Contra Costa County<br>Super. Ct. No. 5-131099-4) |

In 2013, defendant David Joseph Dwiggins and his wife were in the process of dissolving their marriage, a marriage that had endured more than 17 years and produced four children.  Economic necessity compelled the couple to live under the same roof, which was about to be lost through foreclosure.

On the afternoon of Friday, March 29, the children were at school.  Defendant and his wife were packing up their belongings because they had to vacate the premises on Monday.  Without provocation, defendant began repeatedly striking his wife about her head and face with a mallet.  Defendant then began to choke her, telling her he was sorry "but this was the only way."  She fought back, escaped, and summoned police. Defendant was arrested at the scene.

After deliberating for over three days, the jury convicted defendant of attempted murder (Pen. Code,[1] §§ 187, 664) and inflicting corporal injury resulting in a traumatic condition (§ 273.5, subds. (a)-(b)).  The jury found true enhancement allegations that

_____

[1] Statutory references are to the Penal Code unless otherwise indicated.

1

during the commission of these offenses defendant had personally used a deadly weapon and inflicted great bodily injury (§§ 12022, subd. (b)(1), 12022.7, subd. (e)).  The jury also convicted defendant of assault with a deadly weapon (§ 245, subds. (a)(1)).  The trial court sentenced defendant to state prison for an aggregate term of 12 years.  On this timely appeal, defendant presents two contentions:  (1) the trial court exerted undue pressure on the jury; and (2) his trial counsel was constitutionally incompetent for not making a motion to suppress highly incriminating material taken from his private computer.

### There Was No Undue Pressure Exerted On the Jury By the Trial Court

The case was sent to the jury at 9:54 a.m. on August 20.  Just before recessing for lunch, the jury sent out a number of questions.  The remainder of the day was devoted to answering those questions, and responding to requests for readback of testimony.  On August 21, the jury heard the readback, and spent the day deliberating.  The jury was to resume deliberating on August 25.

August 25 was a busy day.  The court finalized its answers to the last of the questions sent by the jury on August 21, which included further readback of testimony.  Before sending the answers to the jury, the court received another question from them, plus two more requests for readback.  Just before the lunch break, the court received the following message:  "We are locked on Count one [the premeditated attempted murder charge].  We have a verdict on Counts two and three.  We have been discussing Count one for three days, have reviewed the evidence and have not had any movement."

The court discussed with counsel whether, as the court phrased it, "all of the readback request should be completed first before the Court reads the *Allen*[2] instruction, modified, or whether the *Allen* instruction should be read now to be followed by the requested readback.  [¶]  Ms. Maldonado [the prosecutor] thinks that the end request, that the *Allen* instruction should be read now.  Mr. Kelly's [defense counsel] view is that it

---

[2] A reference to *Allen v. United States* (1896) 164 U.S. 492, where the United States Supreme Court approved the use of a so-called "dynamite charge" that was repudiated for use in California by *People v. Gainer* (1977) 19 Cal.3d 835.

should not be read now, and all the readback request[s] received before the notification from the jury that they were deadlocked on Count One should be read first followed by the *Allen* instruction." The court was inclined to agree with the prosecutor, but the question was argued at some length.

At 2:12 p.m., the court instructed the jury with the following language, taken from *People v. Moore* (2002) 96 Cal.App.4th 1105:

"Ladies and gentlemen, I have further instructions to give you.

"It's been my experience on more than one occasion that a jury that initially reported that it was unable to reach a verdict was ultimately able to arrive at a verdict. To assist you in your further deliberations, I'm going to give you the following instructions.

"Your goal as jurors should be to reach a fair and impartial verdict if you're able to do so based solely on the evidence presented and without regard for the consequences of your verdict, regardless of how long it takes to do so.

"It is your duty as jurors to carefully consider, weigh, and evaluate all of the evidence presented at the trial, and to discuss your views regarding the evidence, and to listen and consider the views of your fellow jurors.

"In the course of your further deliberations, you should not hesitate to re-examine your own views or to request your fellow jurors to re-examine theirs. You should not hesitate to change a view you once held if you are convinced that it's wrong or to suggest that other jurors change their views if you are convinced they are wrong.

"Fair and effective jury deliberations require a frank and forthright exchange of views.

"As I previously instructed, each of you must decide the case for yourself, and you must do so only after a full and complete consideration of all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of arriving at a verdict on the charge if you can do so without violence to your individual judgment.

"Both the People and the defendant are entitled to the individual judgment of each juror.

"As I previously instructed, you have the absolute discretion to conduct your deliberations in any way you deem appropriate. If I may suggest, since you have not been able to arrive at a verdict using the methods that you have chosen, that you consider to change the methods you have been following, at least temporarily, and try new methods.

"For example, you may wish to consider having different jurors lead the discussions for a period of time, or you may wish to experiment with reverse role playing by having those on one side of an issue present and argue the other side's position and vice versa. This might enable you to better understand the other's positions.

"By suggesting you should consider changes in your methods of deliberations, I want to stress I am not dictating or instructing you as to how to conduct your deliberations. I merely suggest you may find it productive to do whatever is necessary to ensure each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors.

"I also suggest you reread instructions 200 and 3550. These instructions pertain to your duties as jurors and make recommendations on how you should deliberate.

"The integrity of a trial requires that jurors at all times during their deliberations conduct themselves as required by the instructions. Instructions 200 and 3550 define the duties of a juror.

"The decision the jury renders must be based on the facts and the law. You must determine what facts have been proved from the evidence received in the trial and not from any other source. A fact is something proved by the evidence or by stipulation.

"Second, you must apply the law as I stated it to you to the facts as you determine them and, in this way, arrive at your verdict.

"You must accept and follow the law as I stated it to you regardless of whether you agree with the law. If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions.

4

"Instruction 3550 defines the jury's duty to deliberate. The decisions you make in this case must be based on the evidence received in the trial and the instructions given by the Court. These are the matters this instruction requires you to discuss for the purpose of reaching a verdict.

"Instruction 3550 also instructs how jurors should approach their task.

"You should keep this instruction in mind when considering the additional instructions, comments and suggestions I'm now giving you. I hope these comments and suggestions may be of some assistance to you.

"I will ask that you continue your deliberations at this time. If you have questions, concerns, requests or any other communications you desire to report to me, please put those in writing on the forms we have provided to you. Have them signed and dated by your foreperson, or by one or more members of the jury, and then please notify the bailiff."

The jury retired and deliberated from 2:18 p.m. until recessing at 4:29 p.m. Initially, the court sent the reporter to "read the requested testimony from the defendant" to the jury, and thereafter worked with counsel on the content of the rest of the readback for the jury.

On August 26, the jury deliberated from 9:15 a.m. to approximately 11:40 a.m., when it advised the court that it had reached a verdict on count one.[3]

Defendant claims the above-quoted instruction amounted to prejudicial error. He terms it "undue pressure," not because of its content, but because of its timing. Although defendant cites *People v. Gainer*, *supra*, 19 Cal.3d 835, he does not contend that the instruction given here was actually coercive or otherwise browbeat the jury in convicting defendant on count one. Such a claim would have to be rejected. (See *People v. Valdez*

---

[3] The jury acquitted defendant of the charged offense of attempted willful, deliberate, and premeditated murder, convicting him of the lesser included offense of attempted murder.

(2012) 55 Cal.4th 82, 162–163.)[4] Defendant discerns the "undue pressure" in the timing of the instruction: "the giving of the *Allen* [sic] charge after receiving the jury's request for additional readbacks of testimony, without first providing the testimony they had requested, interfered with the jury's task in a way which violated appellant's Constitutional right to have his guilt or innocence determined by the unanimous verdict of a jury of 12 persons."

The trial court's election as to how to respond to the jury's note of deadlock was one of several tools at its disposal,[5] and would thus be a matter entrusted to the court's discretion. (E.g., *People v. Ardoin* (2011) 196 Cal.App.4th 102, 127–128 [under § 1138 trial court has discretion to decide when supplemental instruction is necessary]; *People v. McCleod* (1997) 55 Cal.App.4th 1205, 1219–1220 [under § 1138 trial court has

---

[4] Although the instruction in *Valdez* differed from the one used here, the Supreme Court's reasoning is equally applicable: "[T]he instruction defendant challenges here does not share the vices the *Gainer* instruction contained. It did not in any way single out minority jurors or encourage those jurors—if in fact there were any—to consider, along with the arguments and the evidence, 'their own status as dissenters.' . . . Nor did the instruction either exert pressure on or in any way encourage jurors in the minority to abandon their independent judgment and acquiesce in a verdict simply because the majority had reached a verdict. . . . Nor did the court, through its instructions, in any way indicate or suggest that it favored a particular verdict or even that it had an opinion as to the proper verdict under the evidence." (*People v. Valdez*, *supra*, 55 Cal.4th 82, 157–158, 162–163; see also *People v. Sheldon* (1989) 48 Cal.3d 935, 959–960 [examples of coercive instructions].)

[5] "(a) Determination

"After a jury reports that it has reached an impasse in its deliberations, the trial judge may, in the presence of counsel, advise the jury of its duty to decide the case based on the evidence while keeping an open mind and talking about the evidence with each other. The judge should ask the jury if it has specific concerns which, if resolved, might assist the jury in reaching a verdict.

"(b) Possible further action

"If the trial judge determines that further action might assist the jury in reaching a verdict, the judge may: [¶] (1) Give additional instructions; [¶] (2) Clarify previous instructions; [¶] (3) Permit attorneys to make additional closing arguments; or [¶] (4) Employ any combination of these measures." (Cal. Rules of Court, rule 2.1036, bold type omitted.)

"discretion to determine what additional explanations . . . are needed to satisfy the [jury]"]; cf. *People v. Young* (2007) 156 Cal.App.4th 1165, 1171 ["when faced with questions from the jury, including that they have reached an impasse, 'a court must do more than figuratively throw up its hands . . . .' "].)  It was, in other words, an exercise of the court's discretion to alter the order of procedure.  (§§ 1093, 1094; *People v. Smith* (2008) 168 Cal.App.4th 7, 14 ["trial courts are vested with wide discretion as to when to instruct the jury"].)  The trial court could reasonably conclude that giving the readbacks without the instruction would only compound the impasse.  On the other hand, the instruction might allow the jury to reach a verdict without the need for the readback. Moreover, in making that decision, we must assume the court was aware of the logistical difficulty in complying with the pending readback request; the decision to send in the reporter to readback defendant's testimony was done immediately after the instruction, but settling the rest of the readback request takes up almost 30 pages in the reporter's transcript.

What we said in *People v. Blocker* (2010) 190 Cal.App.4th 438, 444 is applicable here:  "The standard test for ascertaining an abuse of . . . discretion is whether the court's decision exceeded the bounds of reason.  [Citations.]  We conclude the signposts of reason were not passed."

### Defendant Has Not Established He Was Denied the Effective Assistance of Counsel

Defendant contends his trial counsel was constitutionally deficient because he did not move to suppress damaging evidence retrieved from defendant's computer.

During in limine preliminaries it emerged that the prosecution planned to use at trial a number of incriminating documents and Internet searches downloaded from defendant's computer.  The prosecutor told the trial court that one document in particular—known from its salutation as the "Fuck It" letter—was discovered on defendant's computer by his daughter, who told her mother, who in turn e-mailed it to police.  A warrant was then obtained authorizing seizure and forensic examination of the computer.  This information was partially verified during the course of an extended

7

hearing pursuant to Evidence Code section 402.[6] At trial, and without objection from the defense, the letter—in the form of a Word document created on March 23, 2013—was admitted in evidence. So were a number of Internet searches made by defendant, including "kill with a knife" and "the real way to make a silent kill" (both made on March 28).

The wife testified at trial that she and defendant had separate computers. Defendant's laptop was for his exclusive use and was not shared with other members of the family. However, defendant had left his computer running during the assault. The day after the assault, his daughter began using the laptop (with the wife's permission), and found the "Fuck It" document. The wife read it. Horrified that in it defendant wrote about killing the children, she immediately e-mailed it to the detective in charge of the investigation. A police officer came to the house and "retrieve[d]" the computer.

" ' " 'Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission.' " [Citation.]' [Citation.] If the record on appeal ' " 'sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected," ' and the 'claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.' [Citation.]" (*People v. Vines* (2011) 51 Cal.4th 830, 876.) Defendant cannot satisfy these standards.

First of all, we must evaluate defense counsel's acts or omissions in light of what he or she knew at the time. (E.g., *Strickland v. Washington* (1984) 466 U.S. 668, 690; *People v. Bolin* (1998) 18 Cal.4th 297, 333.) The suppression motion would have to have been made prior to trial. (See § 1538.5., subd. (f)(1) ["If the property or evidence relates to a felony offense initiated by a complaint, the motion shall be made only upon filing of

---

[6] At the conclusion of the hearing, the court overruled defense objections that the prosecution had not shown a proper foundation; that the information was not relevant; and that it should be excluded by reason of Evidence Code section 352.

8

an information . . . ."].) Accordingly, information derived from the ensuing trial cannot be used in evaluating counsel's decision to forego a motion to suppress evidence retrieved from defendant's computer.

Second, defense counsel was never asked why he did not make a pretrial suppression motion. Can there be a satisfactory explanation for that omission? The easy answer is yes.

We assume that pretrial discovery made defense counsel aware of two inescapable realities. The first was that the "Fuck It" document came to light not because of police actions, but because it was discovered by defendant's daughter and sent to them by defendant's wife. We also assume that defense trial counsel was aware of the elemental principle that the constitutional prohibition against unreasonable searches and seizures does not apply to private individuals not affiliated with, or acting on behalf of, governmental agencies. (E.g., *Burdeau v. McDowell* (1921) 256 U.S. 465, 475; *Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 332–333; *In re William G.* (1985) 40 Cal.3d 550, 558.) Counsel could reasonably conclude that any attempt to suppress the letter would fall to this principle. "[D]efense counsel's decision not to file a motion he believes will be futile does not ' " 'substantially impair' . . . defendant's right to effective assistance of counsel." ' " (*People v. Gutierrez* (2009) 45 Cal.4th 789, 804.)

The second reality is that police *did* secure a warrant to examine the contents of defendant's computer once it was in their custody. A copy of the warrant, and its supporting affidavit, are not in the record on appeal. However, we further assume that trial counsel examined it and was satisfied with its sufficiency. Certainly there is nothing in the record on appeal to disprove that assumption.

Defendant's argument on appeal can also be read as covering the initial acquisition of defendant's computer. Granted, no warrant authorized taking it into police possession. But the context was a family moving out of their home under a deadline. There is no pretrial information in the record showing that defendant's wife objected to officers taking the laptop, or that those officers had any reason to believe she did not have the ostensible authority to authorize its seizure. Because this too could be viewed as purely

9

private action with no Fourth Amendment implications (*Burdeau v. McDowell*, *supra*, 256 U.S. 465, 475), defendant's trial counsel could make the reasonable tactical decision that there would be scant likelihood of success for a suppression motion aimed at the laptop's acquisition by police prior to it being searched pursuant to a lawfully-issued warrant.  (*People v. Gutierrez*, *supra*, 45 Cal.4th 789, 804.)

The judgment of conviction is affirmed.

_____
Richman, Acting P.J.


We concur:


_____
Stewart, J.


_____
Miller, J.