**Robert FRANCIS, Warden, Georgia Diagnostic and Classification Center, Respondent-Appellant,**

v.

**Eddie SPRAGGINS, Petitioner-Appellee.**

**No. 83–8338.**

United States Court of Appeals, Eleventh Circuit.

Nov. 14, 1983.

Nicholas G. Dumich, Sp. Asst. Atty. Gen., Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for petitioner.

Michael McIntyre, Atlanta, Ga., for respondent.

Before HILL and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Eddie Spraggins was convicted of murder and rape in a Georgia court and was sentenced to death on the murder conviction. The district court granted his petition for a writ of habeas corpus on the ground that he had been denied the effective assistance of counsel at trial. In this appeal, the state challenges the district court's conclusions (1) that the procedural default doctrine of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), does not bar consideration of Spraggins' ineffective assistance claim and (2) that Spraggins was denied the effective assistance of counsel as a result of counsel's argument at the close of the guilt/innocence phase of the trial. We agree with the district court that *Wainwright v. Sykes* is inapplicable in this case and that trial counsel's conduct constituted ineffective assistance. Therefore we affirm.

## I BACKGROUND

On January 31, 1977, the body of Frances Coe was found in her house in Manchester, Georgia. A subsequent autopsy revealed that loss of blood from multiple stab wounds was the cause of death and that there had been manipulation of the victim's genitals consistent with sexual relations.

Spraggins was found guilty of murder and rape after a jury trial in the Superior Court of Meriwether County, Georgia. He received a sentence of death for the murder and a sentence of life imprisonment for the rape.[1] On direct appeal, the Supreme Court of Georgia affirmed the convictions, but vacated the death sentence on the ground that the jury had not been adequately instructed during the sentencing phase of the trial. *Spraggins v. State,* 240 Ga. 759, 243 S.E.2d 20 (1978). After a second sentencing trial before a jury, Spraggins was again sentenced to death. This death sentence was affirmed by the Georgia Supreme Court. *Spraggins v. State,* 243 Ga. 73, 252 S.E.2d 620 (1979). The United States Supreme Court granted Spraggins' petition for a writ of certiorari, vacated the sentence of death, and remanded the case to the state supreme court for further consideration in light of *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). *Spraggins v. Georgia,* 446 U.S. 961, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980). On remand, the Georgia court reaffirmed the death sentence. *Spraggins v. State,* 246 Ga. 432, 271 S.E.2d 828 (1980), *cert. denied,* 451 U.S. 921, 101 S.Ct. 2000, 68 L.Ed.2d 312 (1981). Spraggins unsuccessfully sought state post-conviction relief in the Superior Court of Butts County, Georgia, and the Georgia Supreme Court denied his application for a certificate of probable cause to appeal. Spraggins' petition for a writ of certiorari was denied by the United States Supreme Court. *Spraggins v. Zant,* —— U.S. ——, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982).

Spraggins then filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Georgia. After an evidentiary hearing, the district court ruled that Spraggins had received ineffective assistance of counsel during the guilt/innocence portion of the trial and vacated the murder and rape convictions. The state appeals.

## II PROCEDURAL DEFAULT

The state urges this court to extend the rule of preclusion set forth in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to procedural defaults occurring at the state habeas stage of a proceeding.[2] We need not reach this issue,

---

1. Spraggins' co-defendant, Freddie Davis, was tried separately and was similarly convicted and sentenced.

2. The state concedes that Spraggins has fully exhausted state remedies with respect to all of his claims. *See* Record on Appeal, p. 210; Brief for Appellant, pp. 13–14. According to the state, those claims contained in Spraggins' original federal habeas petition were raised in state court, while those added in his amended petition—including ineffective assistance arising from counsel's closing argument at the guilt/innocence phase of the trial—were not raised at trial, on direct appeal, or in the state

for we agree with the district court that because Spraggins' ineffective assistance claim was raised in his state habeas petition, there was no procedural default in this case.[3]

In his petition for state post-conviction relief, Spraggins alleged, *inter alia,* that trial counsel had been ineffective. As specific grounds in support of this claim, he listed eleven failings pertaining to counsel's conduct before and during the guilt/innocence phase of the original trial and at the resentencing hearing. However, he did not specifically mention counsel's closing argument at the guilt/innocence phase. In ruling against Spraggins, the state habeas court reviewed the totality of counsel's representation at trial. Citing to the corresponding portion of the trial transcript, the court noted in particular that counsel had, among other things, made a closing argument at the guilt/innocence phase.[4] Presumably the court not only ascertained the fact that counsel had made a closing argument, but also assessed the contents of that argument. Indeed, to the extent that the making of a closing argument in itself has no independent significance, the only reasonable inference is that the court considered the substance of the argument and

concluded, albeit erroneously, that the argument contributed to counsel's effective assistance. On this reasoning, the district court found that the claim in question was raised by Spraggins and decided by the state habeas court.[5] The scope of our review with respect to such a finding of fact is, of course, restricted to determining whether it is "clearly erroneous." *See United States v. Deal,* 678 F.2d 1062, 1065 (11th Cir.1982).

■ The state asserts that Spraggins' failure to specify counsel's closing argument as a ground supporting his ineffective assistance claim constitutes a procedural default under the Georgia statutory provision governing the effect of a petitioner's omission of claims from an initial state post-conviction proceeding. Section 9–14–51 of the Georgia Code provides:

> All grounds for relief claimed by petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise require it or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which

habeas petition, and therefore have been forfeited under Georgia law. Because a federal habeas petitioner is required to exhaust only *available* state remedies, the state asserts, both sets of claims have been exhausted. We agree that the exhaustion requirement poses no obstacle to Spraggins' federal habeas petition, but for a different reason. Since, as we conclude *infra,* the ineffective assistance claim was raised in Spraggins' state habeas petition and decided by the state court, state remedies with respect to the claim have been exhausted literally, *i.e.,* in the sense that Spraggins has pursued his claim in the state court system, not in the sense that the remedies are foreclosed by a state procedural rule.

**3.** Accordingly, we do not decide whether the procedural default doctrine of *Wainwright ·v. Sykes* applies with respect to state procedural rules governing state habeas petitions so as to bar consideration by a federal habeas court of claims previously omitted from a state petition. We note that the extension of the doctrine to this type of case would be unprecedented in our decisions and in those of the Supreme

Court, and would raise serious policy questions perhaps best left to Congress, *see Autry v. Estelle,* —— U.S. ——, 104 S.Ct. 24, 78 L.Ed.2d 7 (U.S., White, Circuit Justice, 1983). Nevertheless, we hold only that the doctrine, even if applicable generally, would not be triggered in this particular case.

We also decline to decide whether the state may invoke the procedural default doctrine absent a prior state court ruling that the claim at issue has been forfeited under the applicable state procedural rule and may not be litigated in state court. We note, however, our reluctance to speculate in a given case that the state courts would be unwilling to consider the merits of the petitioner's constitutional claim, rather than posing the issue directly to the state courts.

**4.** *See Spraggins v. Zant,* No. 5195 (Super. Ct.Ga. Jan. 4, 1982) (order denying petition for writ of habeas corpus), p. 4.

**5.** *See Spraggins v. Francis,* No. C82–167N (N.D.Ga. Apr. 8, 1983) (order granting petition for writ of habeas corpus), p. 5.

could not reasonably have been raised in the original or amended petition.

Ga.Code § 9–14–51 (1982).

Given that Spraggins alleged ineffective assistance with respect to counsel's conduct at trial and the state habeas court reviewed the particular conduct on which the claim rests, we agree with the district court that Spraggins was not in default of the state procedural rule and hold that the court properly proceeded to the merits of the claim without applying the "cause" and "actual prejudice" standard announced in *Wainwright v. Sykes.* This is not to say that a general allegation of ineffective assistance or a specific allegation of ineffective assistance wholly unrelated to the ground on which the claim ultimately depends will immunize a petitioner from a finding of procedural default. But where the petitioner calls the state court's attention to ineffective assistance problems and the court examines the crucial aspect of counsel's representation, as in this case, the petitioner may relitigate the constitutional claim in federal court.[6]

## III  INEFFECTIVE ASSISTANCE

Spraggins was represented at both trials and on direct appeal by Vernon Belcher, a court-appointed attorney. For purposes of the present appeal, a single aspect of counsel's representation at the first trial warrants special attention. Belcher conceded his client's guilt in his argument to the jury at the close of the guilt/innocence phase of the trial. Having plead not-guilty, Spraggins had taken the stand and denied any knowledge of participating in the crimes with which he was charged. He had also denied making exculpatory statements to the police. Nevertheless, in addressing the jury, Belcher expressed his belief that his client had committed the murder, and rather than urging acquittal on the ground of insanity, he suggested that his client deserved life imprisonment.[7]

---

**6.** Our holding is supported by the new Fifth Circuit's recent opinion in *Vela v. Estelle,* 708 F.2d 954 (5th Cir.1983). Before the state courts, the petitioner in that case had raised a general ineffective assistance claim, highlighting a number of trial errors on counsel's part. Reasserting his ineffective assistance claim in the federal courts, the petitioner underscored additional trial errors. Noting that "all of these errors support the same constitutional claim urged before the state court, and all were readily discernable from the review of the entire record which that court was obligated to carry out," *id.* at 960, the court concluded that for exhaustion purposes, the additional grounds for the general claims had been fairly presented to the state courts. On similar reasoning, we hold that Spraggins' allegations were fairly presented to the state courts for procedural default purposes.

**7.** Among Belcher's statements in his final argument to the jury are the following:

> We know the deceased, Ms. Coe, was killed and there is no question about that. And I think you have made up your minds about what happened and it is not necessary for me to go into it. But, what I want to talk to you about is the defendant himself. Now, we have a man here who is mentally retarded.... [I]f you've had any experience around this type of people, you know just like I do that they will do what you tell them to. If they are badly retarded, they will commit crimes if they are told to do so. If you

hand them a knife and tell them to kill somebody they won't ask any questions, they'll do it. This is a characteristic of a retarded person.... If he was sane, as you are, there won't be very much a question in my mind, because there is no reason in the world for this thing to happen. There is no justification for it. You would think I was crazy if I tried to come up here and bring some excuse for it happening. It's just something that should not have happened, but when you are dealing with feebleminded people, people that are retarded, they're on drugs, and they're drinking to excess, then these things will probably happen.... Really, I think what happened here, I think the man was intoxicated, he was heavily intoxicated, he was on drugs, and he is a retarded man too, and I think he is telling the truth when he says he doesn't remember going in the house. He told me that all the time, but I think he did, from the evidence that the State has put up, I think he went in the house and I think he committed the crime of murder probably, but I think when he went in the house and he put his hands on Ms. Coe, I think she started fighting and screaming to get away from him, which is a natural reaction, and when she did this, he being drunk and having this mental condition, being on drugs too, he just went all to pieces and he doesn't know what he did. That often times happens when you are dealing with people in that condition.... I'm not telling you to turn him loose. I'd like to see him in the penitentiary for the rest of

■ On these facts, the district court concluded that "petitioner received ineffective assistance of counsel when his trial counsel conceded petitioner's guilt as to murder at the guilt/innocence phase of his trial and concentrated on a line of argument more properly directed to the penalty phase of the trial."[8] While we agree with this conclusion, we observe that Spraggins' ineffective assistance claim presents a mixed question of law and fact to be examined independently by this court. *See Gray v. Lucas,* 677 F.2d 1086, 1107 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983).

In *Washington v. Strickland,* 693 F.2d 1243 (5th Cir. Unit B 1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983), the former Fifth Circuit set out the standard for assessing a claim of ineffective assistance of counsel. The court noted that "[a] petitioner who seeks to overturn his conviction on grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence," *id.* at 1250 (footnote omitted), and that "a habeas petitioner must show that his counsel's ineffectiveness caused 'actual and substantial disadvantage' to the conduct of his defense," *id.* The court declared, "[t]he sixth amendment guarantees to criminal defendants . . . *effective* assistance of counsel, that is, counsel reasonably likely to render and rendering reasonably effective assistance given the totality of the circumstances." *Id.* (emphasis in original). Although there is a presumption of attorney competence, "[t]his presumption can be rebutted . . . when certain of counsel's actions do not conform to a general pattern of a rational trial strategy." *Id.* at 1257–58.

■ Here the state contends that "the argument by Mr. Belcher was a logical strategy decision in light of the evidence and the incriminatory statements made by the appellee. Mr. Belcher attempted to win sympathy from the jury rather than taking a hypocritical point of view" at the sentencing hearing. Reply Brief for Appellant, p. 5. In his final argument, counsel not only failed to provide meaningful advocacy on the issue of guilt, but actually urged the jury to return a verdict of guilty. At one point, he declared, "I think he went in the house and I think he committed the crime of murder . . . ." Respondent's Exhibit II, vol. III, p. 129. Even a prosecutor may not properly express such a personal opinion as to the defendant's guilt. *See United States v. Morris,* 568 F.2d 396, 401–02 (5th Cir. 1978). Given Spraggins' plea of not-guilty, his denial of involvement in the crime, and the insubstantiality of his insanity defense, we conclude that counsel's conceding his client's guilt was irrational and rendered his assistance at trial ineffective.

■ Where a capital defendant, by his testimony as well as his plea, seeks a verdict of not guilty, counsel, though faced with strong evidence against his client, may not concede the issue of guilt merely to avoid a somewhat hypocritical presentation during the sentencing phase and thereby maintain his credibility before the jury. Even though an adverse verdict would have the effect of precluding further argument on the issue of guilt, counsel does not have license to anticipate that effect and to concede the issue during the guilt/innocence phase simply because an adverse verdict appears likely. As the Sixth Circuit reasoned in a similar case, counsel's complete concession of the defendant's guilt nullifies his right to have the issue of his guilt or innocence presented to the jury as an adversarial issue and therefore constitutes ineffective assistance. *See Wiley v. Sowders,*

---

his life because I know that he could have done this to a member of my family. He could have done it to a member of your family or anybody else and what we should have done was taken some kind of precaution a long time ago when his family, not knowing how to get it done, and tried for years and years and never have been able to get it done and of course, it was climaxed in this awful tragedy, when this awful tragedy occurred.
Respondent's Exhibit II, vol. III, pp. 126–30.

8. *Spraggins v. Francis,* No. C82–167N (N.D.Ga. Apr. 8, 1983) (order granting petition for writ of habeas corpus), p. 5.

647 F.2d 642, 650 (6th Cir.), *cert. denied,* 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981).

Our conclusion is consistent with that in *Young v. Zant,* 677 F.2d 792 (11th Cir.1982). There we held that the defendant received ineffective assistance where counsel adopted the insanity defense without support, ignored obvious defenses, and conceded the guilt of his client in the mistaken belief that such an action was strategically necessary in order to make a strong plea for mercy. While there is no assertion that Belcher ignored defenses to the charges or that he, like counsel in *Young,* was unaware that the murder charge would be tried under a bifurcated procedure, the situation in *Young* is fundamentally similar to the one now presented.[9] Although counsel at a capital trial may take steps to evoke jury sympathy prior to the sentencing hearing, again "we can discern *no* possible reason for [conceding the defendant's guilt] under the present bifurcated procedure." *Id.* at 799 (emphasis in original).

Because Spraggins' guilt or innocence was the only issue to be decided at the earlier phase of the trial and was obviously critical, we also conclude that "counsel's ineffectiveness caused 'actual and substantial disadvantage' to the conduct of [Spraggins'] defense." *Washington,* 693 F.2d at 1250. Hence we agree with the district court that Spraggins was deprived of his sixth amendment right to the effective assistance of counsel at trial and hold that the court properly granted habeas relief.

For the foregoing reasons, the order of the district court granting Spraggins' petition for a writ of habeas corpus is AFFIRMED.

---

**9.** We note that Belcher, like counsel in *Young,* asserted the insanity defense without supporting evidence. Our decision, however, is not based upon this aspect of counsel's representation.