Filed 4/7/15  P. v. Nava CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>LUIS ALBERTO ALARCON NAVA,<br><br>        Defendant and Appellant. | F066338<br><br>(Super. Ct. No. DF010682A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Cory J. Woodward, Judge.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Larenda Delaini and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted appellant Luis Alberto Alarcon Nava of kidnap with intent to rape and assault with intent to rape. During deliberations, the jury submitted the following question to the trial judge: "When does the act of kidnapping start with regard to 'movement.'" The trial court did not answer the jury's question, determining this was a factual issue, but the court offered additional argument from the attorneys. After three hours of continued deliberations, the jury requested additional argument. Before the arguments occurred, the trial judge confirmed with the foreman that the jury was deadlocked. During the additional arguments, appellant's trial counsel made certain comments concerning movement.

Appellant contends the trial court prejudicially erred when it failed to provide clarification to the jury, arguing the jury sought further legal instruction, and he maintains the court erred in ordering additional argument. Finally, appellant asserts his trial counsel made a "concession" during the additional arguments, establishing ineffective assistance of counsel.

We find appellant's arguments unpersuasive and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant does not challenge the sufficiency of the evidence supporting the jury's verdicts. As such, set forth below is a summary of the trial facts taken in the light most favorable to the verdicts and relevant to the issues on appeal.

**1.      Prosecution evidence.**

In February 2012, C.Q. lived in Terra Bella with her 15-year-old daughter, C.A. C.Q. maintained a relationship with appellant, who would occasionally live with her when he worked in the area.

In the very early morning hours of February 1, 2012, appellant drove C.Q. and C.A. from their residence to Delano. An unnamed woman, who was a stranger to C.Q. and C.A., was also in appellant's vehicle. The stranger behaved drunk or high, and C.Q.

2.

asked appellant who she was, why she was with him, and whether he was having sex with her. Appellant did not answer her questions.[1]

After dropping off the stranger at a Fastrip in Delano, C.Q. asked appellant to park in a nearby lot because appellant appeared intoxicated and had been speeding. They parked for a while and then appellant drove them to C.Q.'s friend in Delano. At her friend's location, C.Q. exited appellant's vehicle but appellant sped away before C.A. got out. C.Q. immediately called C.A. on her cell phone, but when C.A. did not answer, C.Q. called 911.[2] Law enforcement officers responded to C.Q.'s location about five minutes later.

After appellant drove away, C.A. asked him to take her back to her mother, but appellant told her to shut up. C.A. was afraid. Appellant drove her to an orchard and, after parking, he climbed into the backseat, removed his pants and forcibly removed her pants and leggings. When C.A. resisted, he struck her face, tried to bite her neck, and bit her fingers when she put her hand up. Appellant tried to penetrate C.A. with his penis, but she kept her hand over her vagina. Appellant ejaculated on her leg.

Appellant dressed, but he put his pants on backwards. Appellant drove C.A. back to C.Q.'s location. On the way, C.A. called C.Q., said they were returning but were lost and needed directions. C.Q. alerted the responding officers, who drove about a block away to observe unseen.

It was still dark outside when appellant returned and parked at C.Q.'s location. The officers activated their lights and pulled behind appellant's vehicle. After appellant parked, C.A. exited the back of his vehicle and ran to the house. The officers were focused on appellant and did not see C.A. either riding in, or exiting, his vehicle. An

---

[1]     C.Q. told the jury she was not upset that the stranger was in appellant's vehicle.

[2]     It was stipulated that C.Q. made the 911 phone call at 5:38 a.m.

officer did see C.A. walking or running towards the friend's house after the officers pulled behind appellant's vehicle.[3]

C.A. ran from the house, crying and said appellant tried to rape her. The officers noticed that appellant's pants were "inside out" and his zipper was down. Officers noticed that appellant emitted a moderate to strong odor of alcohol. [4] Appellant was arrested.[5]

## 2.    Forensic evidence.

Law enforcement took C.A.'s clothing as evidence. C.A. underwent a medical evaluation at the hospital, and traces of appellant's sperm were discovered on her left thigh and on her leggings. C.A. had bruising around one eye, and two marks on her fingers consistent with a bite. A swab taken from C.A.'s right face was positive for saliva. The marks on C.A.'s fingers also tested positive for saliva.

## 3.    Appellant's interview with law enforcement.

Law enforcement interviewed appellant on February 2, 2012.[6] He stated he was very drunk before he picked up C.Q. and C.A. He insisted that he did not know the strange woman but only gave her a ride to help her.

Appellant said he did not realize C.A. was in the backseat when C.Q. exited his vehicle at her friend's house. C.A. woke up and asked where he was taking her. He said something came over him, he imagined C.A. as a woman, wanted to look at her, and

---

[3]    At the preliminary hearing, the same officer testified that he first saw C.A. as she was coming out of the residence and not as she walked towards the residence. The officer stated that his trial testimony was correct and he was "mixed up" when he testified during the preliminary hearing.

[4]    Law enforcement did not test appellant to determine his blood alcohol level.

[5]    Neither C.Q. nor C.A. told the responding officers about the strange woman who rode with appellant.

[6]    The videotaped interview occurred in Spanish and was played for the jury with a translation.

wanted to "do it" with her. Appellant initially denied taking off C.A.'s clothes, but admitted that he tried to rape her and slapped her. Appellant described C.A. as "scared" and he wanted "to pay" for what he did because he was sorry. He admitted that he ejaculated on C.A. and later admitted that he removed her clothes below her waist.

### 4. Defense evidence.

Appellant testified on his own behalf and denied all of the allegations against him. On the evening in question he came across a strange woman, who seemed scared and lost. Appellant wanted to help her and decided to take her to C.Q., whom he described as his "supposed partner or girlfriend."[7]

C.Q. became upset when he arrived with the strange woman. C.Q. insisted that she and C.A. would accompany him to drop off the stranger in Delano. During the ride to Delano, C.Q. and C.A. argued and insulted the stranger, and the stranger bit C.A.'s hand before she exited the vehicle in Delano. Appellant informed the jury that he tried to "clean" C.A.'s bite wound with his saliva.

At the friend's residence, C.Q. said she wanted to speak with appellant alone, but C.A. was upset with him and told her mother not to listen. C.A. got out of his vehicle but C.Q. remained, wanting more information about the strange woman, and appellant continued to deny any knowledge of her. Appellant told the jury that C.Q. became intimate with him and began to perform oral sex on him, which appellant did not really want so he masturbated to end it quickly. Appellant ejaculated and C.Q. cleaned off his penis.[8]

C.Q. became upset again, and threatened to call the police and report that he was "bothering her." C.Q. exited his vehicle, called the police, and appellant heard her say

---

[7]     Appellant told the jury that he only rented from C.Q. and he did not have an intimate relationship with her although she wanted one.

[8]     During her trial testimony, C.Q. denied being intimate with appellant at any time on the morning in question.

that he was drunk. According to appellant, he drove away without C.A. in his vehicle. After driving for a while, appellant decided to return to seek forgiveness, believing C.Q. was not really calling the police.

Upon returning, appellant asked C.Q. for forgiveness about the strange woman and said everything was a misunderstanding. C.Q. told him that she called the police about him wanting to take C.A., which he denied. According to appellant, C.Q. told him she was going to fix everything and talk to the police to help him.

The police arrived and C.Q. said she called them because C.A. was lost and appellant tried to help, and brought C.A. back. About 10 minutes later, C.A. starting telling everyone that appellant tried to rape her and hit her, which he denied. The police arrested him.

Regarding his admissions during his police interview, appellant stated he tried to protect "them" and himself. He believed he heard at some point what he was "supposed to say." He thought the interviewing detectives would harm him because of the corruption that exists in Mexico. Appellant decided to make his admissions to avoid any harm.[9]

Appellant testified that he knew of a story about one of C.A.'s friends who had been sexually assaulted in an orchard. Appellant believed C.A.'s story was based on what happened to her friend.

The defense elicited testimony from appellant's sister, Ana Hernandez, who testified that C.Q. came to her residence many times and requested $600 because her son was in jail at the border. C.Q. offered to drop the charges against appellant if Hernandez would pay her money. C.Q. told Hernandez that C.A. was lying.

---

[9]    After charges were filed against him, appellant made telephone calls from jail, and he spoke with C.Q. The recorded phone calls were moved into evidence.

Maria Raya, appellant's sister-in-law, testified that C.Q. came to her residence several times and requested $600 to get her son out of jail. C.Q. said her daughter would drop the charges against appellant in exchange for the money. C.Q. said she would take C.A. to Los Angeles so she would fail to appear in court.

## 5. Information.

On February 21, 2012, the Kern County District Attorney's Office filed an information charging appellant with kidnap with intent to rape (Pen. Code,[10] § 209, subd. (b)(1); count 1); assault with intent to rape (§§ 220, 261, subd. (a)(2); count 2); and making a criminal threat (§ 422; count 3). As to all three counts, it was further alleged that appellant was not eligible for imprisonment in the county jail due to a current conviction or sentence enhancement (§ 1170, subds. (f), (h)(3)). Appellant entered a plea of not guilty and denied the special allegations.

## 6. Verdicts and sentencing.

The jury found appellant guilty of count 1, kidnap with intent to rape (§ 209, subd. (b)(1)), and guilty of count 2, assault with intent to rape (§§ 220, 261, subd. (a)(2)).[11] The jury found appellant not guilty of count 3, making a criminal threat (§ 422).

Appellant was sentenced to seven years to life on count 1 and six years on count 2, which was stayed pursuant to section 654. Various fees and fines were imposed.

---

[10] All future statutory references are to the Penal Code.

[11] Regarding count 2, the abstract of judgment contains a clerical error showing conviction under Penal Code sections "220/26(A)(2)." As discussed in section IV of the Discussion, *post*, we order the trial court to correct the abstract of judgment on our own motion. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187.)

7.

## I. The Trial Court Did Not Prejudicially Abuse Its Discretion Regarding How It Responded To The Jury's Note.

Appellant argues that the trial court prejudicially abused its discretion after the jury submitted its question during deliberations, contending that the information sought was legal in nature and the court failed to instruct or assist the jury. Appellant maintains that the court's actions violated his rights to trial by jury and a fair trial guaranteed by the Sixth and Fourteenth Amendments, requiring reversal of count 1.

### A. Background.

Prior to the start of deliberations, the court provided the following relevant jury instructions.

### CALCRIM No. 250.

"The crimes charged, and lesser included crimes, in this case require proof of the union, or joint operation, of act and wrongful intent.

"The defendant is charged in Count 1 with kidnapping for the purpose of rape…. For you to find a person guilty of Count 1 . . ., or the lesser included crime of attempted rape, that person must not only intentionally commit the prohibited act, but must also do so with a specific intent. The act and the specific intent required are explained in the instruction for that crime…. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime."

### CALCRIM No. 1203.

"No. 1203: The defendant is charged in Count 1 with kidnapping for the purpose of rape.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1.     The defendant intended to commit rape;

"2.     Acting with that intent, the defendant took, held, or detained another person by using force or by instilling a reasonable fear;

8.

"3. Using that force or fear, the defendant moved the other person a substantial distance;

"3.[*sic*] The other person was moved or made to move a distance beyond that merely incidental to the commission of a rape;

"5. When that movement began, the defendant already intended to commit rape;

"And

"6. The other person did not consent to the movement.

"As used here, substantial distance means more than a slight or trivial distance.  The movement must have substantially increased the risk of physical or psychological harm to the person beyond that necessarily present in the rape.  In deciding whether the movement was sufficient, consider all the circumstances relating to the movement.

"To be guilty of kidnapping for the purpose of rape, the defendant does not actually have to commit the rape."

### 1. The note from the jury.

During deliberations, the jury foreman submitted a written note to the trial court, which stated: "Please clarify #5 of section 1203, page 6.  [¶]  When does the act of kidnapping start with regard to 'movement.'"

The trial court submitted the following written response on the same note: "The court cannot assist you with this question.  This is an issue for the jury to decide. Additional argument from the attorneys can be made if the jury would find it of assistance."

### 2. The court meets with the attorneys and the jury.

After the court provided its written response to the jury's inquiry, the court met with both counsel the following day outside the presence of the jury.  The court noted the following for the record:

"The jury yesterday, that was November the 1st, had sent out a note requesting some further instruction on the issue of movement.

9.

"I called the attorneys in and tried to determine how to respond. And, ultimately, the Court, with the agreement of counsel -- strike that last portion. The Court had written, in response, after discussing with the lawyers, that we could not give them any additional information, 'We can not [*sic*] assist you with that.'

"The question was asked. It was an issue for the jury to decide. The Court indicated that additional argument from the attorneys could be made if they wanted. That was submitted. The jury spent the rest of the afternoon deliberating.

"At the end of the day, about three hours later, they did ask for the additional argument; so the Court's indication to the attorneys was that we were going to do that this morning."

Appellant's counsel objected to additional arguments, contending the jury was not deadlocked as required for additional arguments under California Rules of Court, rule 2.1036(a). The court reconvened the jury, noted for the record that the jury had requested additional argument, and asked the foreman if the issue in the note might resolve a significant dispute among the jurors. The foreman stated it was "paramount" to resolving the one remaining issue, and the foreman agreed the jury was deadlocked or at an impasse. The foreman clarified that the issue in the note was the "center piece" but it developed from that into "intent, prior intent previous to the actual movement … [¶]…[¶] … in this case of the vehicle"

The trial court declared that they were going to proceed with additional limited argument from counsel.

**B.      Standard of review.**

Section 1138 states, in relevant part: "After the jury have retired for deliberation, ... if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

10.

A trial court is required to instruct a deliberating jury regarding any point of law in the case if the jury so requests. (*People v. Waidla* (2000) 22 Cal.4th 690, 746.) The trial court has a primary duty to assist the jury in understanding the legal principles it is asked to apply. (*People v. Beardslee* (1991) 53 Cal.3d 68, 97 (*Beardslee*).) The court, however, is not required to elaborate on the standard jury instructions if the original instructions are full and complete. (*Ibid.*) In such a situation, the trial court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for additional information. (*Beardslee, supra,* at p. 97.) As our Supreme Court has noted, it is often risky for a trial court to offer comments that diverge from the standard instructions. (*Ibid.*)

"When a question shows the jury has focused on a particular issue, or is leaning in a certain direction, the court must not appear to be an advocate, either endorsing or redirecting the jury's inclination." (*People v. Moore* (1996) 44 Cal.App.4th 1323, 1331 (*Moore*).) The trial court's violation of section 1138 does not require reversal unless prejudice is shown under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Ainsworth* (1988) 45 Cal.3d 984, 1020.)

### C. Analysis.

Appellant asserts that the jury did not understand the legal definition of CALCRIM No. 1203's fifth element as indicated by their question, "[w]hen does the act of kidnapping start with regard to 'movement.'" Appellant argues that the trial court's failure to answer "misleadingly implied that the original instructions were themselves full and complete, and did not provide the jurors the legal information they requested."

Respondent contends that the jury's question did not concern a "point of law" but dealt with the application of the facts to the law. As a result, respondent maintains that the trial court properly exercised its discretion in declining to answer the question but offering additional argument from counsel.

11.

1. **The trial court did not err in believing this was a request for factual information.**

The trial judge must always use extreme caution to avoid conveying any personal opinion to the jury regarding any of the factual issues at trial so as not to invade the jury's role as the factfinder. (*People v. Robillard* (1960) 55 Cal.2d 88, 101, disapproved on another point in *People v. Morse* (1964) 60 Cal.2d 631, 637, fn. 2, 648-649.) Based on its response to the jury, it is apparent the trial court believed this was a factual issue for the jury to decide. We cannot say that the court's belief was in error.

Appellant argues the jury's note established confusion. The jury's note, however, did not express confusion, did not show a misunderstanding of the jury instructions, did not request further instruction, and did not ask for a definition of terms. It was the jury's role to determine the facts and whether those facts justified a legal finding that appellant kidnapped C.A. with the intent to rape. (§§ 1126, 1127.) As part of that fact finding process, the jury had to determine when, if ever, appellant's act of kidnapping started with regard to movement. (§ 209; see CALCRIM Nos. 250, 1203.) Under the circumstances, the trial court did not err in believing this was a request for factual information. By alerting the jury that this was an issue it must decide, the trial judge avoided stepping into the jury's role.

2. **The trial court did not err even if the jury's note was a request for legal information.**

A trial court has the primary obligation to assist the jury in understanding the legal principles of the case. (*Beardslee, supra,* 53 Cal.3d at p. 97.) A trial court must not figuratively "throw up its hands and tell the jury it cannot help." (*Ibid.*) Instead, the court must consider how it can best help the jury, and decide as to each jury question whether further explanation is desirable or whether it should merely reiterate the original instructions already given. (*Ibid.*) A trial court is not required to elaborate on the standard jury instructions if the original instructions are full and complete. (*Ibid.*)

12.

Here, even if the jury's request could be characterized as seeking information on a point of law, triggering section 1138, the trial court did not "figuratively throw up its hands" and refuse to help. (*Beardslee, supra,* 53 Cal.3d at p. 97.) The trial court offered additional argument from the attorneys if the jury believed it would be helpful. The jury continued to deliberate for another three hours before requesting the additional legal argument. The jury was not prohibited from asking the court more questions if it so needed and it is speculative to presume otherwise. (*Id.* at p. 98.)

Moreover, the jury's question showed it had focused on a particular issue or was leaning in a certain direction. As such, the trial court could not appear to be an advocate. (*People v. Montero* (2007) 155 Cal.App.4th 1170, 1180.) Any clarification offered by the court beyond the standard jury instructions would have likely placed the court into the role of an advocate. The court's answer, however, responded to the jury but eliminated the possibility that the trial judge might appear to endorse or redirect the jury's inclination. Under these circumstances, the court did not abuse its discretion when it responded to the jury's note and offered additional argument. (*Beardslee, supra,* 53 Cal.3d at p. 97 [court must decide as to each jury question whether further explanation is desirable or whether it should merely reiterate the original instructions already given]; *Montero, supra,* 155 Cal.App.4th at p. 1180.)

Appellant, however, contends that the original jury instructions were not "full and complete," requiring the trial court to provide further legal explanation. Appellant references the "Bench Notes" of CALCRIM No. 1203, which indicates no court has specifically resolved whether the necessary intent must precede all movement of the victim or only one phase "involving an independently adequate asportation." (CALCRIM No. 1203, Bench Notes, Timing of Necessary Intent.) Appellant, however, cites no legal authority establishing how or in what manner CALCRIM No. 1203 is not full and complete. To the contrary, a jury instruction can be considered "full and

13.

complete" even when it deals with an unresolved issue of law. (See *Moore, supra,* 44 Cal.App.4th at p. 1331.)

In *Moore*, the jury was asked to determine whether the defendant was guilty of inflicting corporal injury on a cohabitant under section 273.5 despite cohabitating with two different people at two different locations during the same period of time. (*Moore, supra,* 44 Cal.App.4th at p. 1326.) At that time, this was an unresolved legal issue. (*Ibid.*) During deliberations, the *Moore* jury sent a note to the judge asking for the legal definition of cohabitation and asking whether simultaneous cohabitation could occur at more than one residence. (*Id.* at p. 1330.) In response, the trial court referred the jury to the original jury instructions and stated it was a question for the jury to decide regarding whether there could be simultaneous cohabitation. (*Ibid.*)

On appeal, the *Moore* court held that the trial court fulfilled its duty under section 1138 when it advised the jury to reread the cohabitation instruction, which it noted was "full and complete for purposes of the facts before it." (*Moore, supra,* 44 Cal.App.4th at p. 1331.) However, it was determined that the trial court's response concerning simultaneous cohabitation left the jury with the responsibility for deciding a question of law, which violated the trial court's mandatory duty to help the jury understand the legal principles involved in the case. (*Id.* at p. 1332.) Nevertheless, reversal was not warranted because the jury was provided with the proper legal definition of cohabitation and, in convicting the defendant as charged, the jury must have either disbelieved the defendant cohabitated with more than one person or it determined a person may simultaneously cohabit with two or more individuals at different locations. (*Id.* at pp. 1332-1333.) The *Moore* court held such a legal conclusion was proper. (*Id.* at pp. 1333-1335.) Accordingly, the trial court's actions were affirmed due to a lack of prejudice. (*Id.* at pp. 1335-1336.)

Here, the jury was provided with the proper legal definition of kidnap for the purpose of rape. Like in *Moore*, the jury instructions were full and complete for purposes

14.

of the facts before the jury.  (*Moore, supra,* 44 Cal.App.4th at p. 1331.)  The trial court did not commit error.

>   3.   **Appellant cannot establish prejudice.**

Appellant contends the trial court's failure "to answer, inform, and instruct the jury" on all of the offense's elements was a "constitutional error" that invoked the federal standard of prejudice under *Chapman v. California* (1967) 386 U.S. 18, 24 (government bears the burden to establish any constitutional error was harmless beyond a reasonable doubt). This argument is without merit because the trial court did not provide inaccurate or incomplete jury instructions.  (See *People v. Flood* (1998) 18 Cal.4th 470, 502-503 [instructional error falls under the *Chapman* standard when the trial court improperly describes or omits an element of an offense]; *People v. Hodges* (2013) 213 Cal.App.4th 531, 539 ["a failure to instruct on all elements of an offense is a constitutional error"].)

Instead, a violation of section 1138 does not require reversal unless, under the *Watson* standard, it is reasonably probable a result more favorable to appellant would have occurred absent the error.  (*People v. Ainsworth, supra,* 45 Cal.3d at p. 1020, citing *People v. Watson, supra,* 46 Cal.2d at p. 836.)  It was the jury's role to determine the facts and whether those facts justified a finding of guilt.  (§§ 1126, 1127.)  After C.Q. was dropped off, C.A. was fearful and objected to being in appellant's vehicle, but he continued to move her a substantial distance with the intent to rape her.  These facts support a conviction of kidnap for the purpose of rape.  (§ 209, subds. (a), (b); see CALCRIM Nos. 250, 1203.)  In rendering its verdict on count 1, the jury rejected the defense theory that appellant never formed an intent to kidnap for purposes of rape or that his voluntary intoxication negated his specific intent.  Like in *Moore*, the jury's conviction in count 1 was based on a correct application of law to the facts.  (*Moore, supra,* 44 Cal.App.4th at p. 1335.)

Appellant provides no authority that the jury's verdict for count 1 was legally incorrect, and he does not establish how the jury instructions were deficient other than his

own speculation on how the jury might have been confused. Contrary to appellant's argument, the record does not establish that the jury was "floundering." Based on a review of this record, and the overwhelming evidence of appellant's guilt, a miscarriage of justice did not occur. Any error under section 1138 was harmless because it is not reasonably probable a result more favorable to appellant would have occurred had the trial judge responded differently to the jury's request. (*People v. Ainsworth, supra,* 45 Cal.3d at p. 1020.)

Appellant also contends his due process right was violated, citing *Beardslee v. Woodford* (9th Cir. 2003) 327 F.3d 799, amended (9th Cir. 2004) 358 F.3d 560.[12] This argument carries no weight because appellant has not offered any basis to infer the jury misinterpreted the law or the jury instructions. (*Id.* at p. 813 [despite trial court's failure to provide requested legal instruction to jury, no prejudice found because jury did not misinterpret law or instructions].)

Finally, appellant attempts to prevent an analysis of prejudice by arguing the deadlocked jury "foreclosed" a discussion of harmless error. He cites *People v. Thompkins* (1987) 195 Cal.App.3d 244 (*Thompkins*). Appellant's argument and reliance on *Thompkins* is unpersuasive.

In *Thompkins*, the jury declared it was deadlocked and the court inquired whether it could assist in any way. (*Thompkins, supra,* 195 Cal.App.3d at p. 249.) The *Thompkins* foreperson submitted two questions seeking clarification of legal issues. The trial judge provided very short answers which were legally deficient, and it directed the jury to resume deliberations. (*Id.* at pp. 250-251.) The jury found the defendant guilty. On appeal, the *Thompkins* court determined an analysis of prejudice was not warranted

---

**12**      We note that this authority is not binding on this court. (*People v. Avena* (1996) 13 Cal.4th 394, 431 [a lower federal court decision is not binding].)

because, prior to the court's legally inadequate instructions, at least one juror was not persuaded by the strength of the prosecution's evidence. (*Id.* at pp. 251-252.)

Here, unlike in *Thompkins*, the jury did not submit its request for information after first declaring it was deadlocked. To the contrary, the jury continued to deliberate for another three hours before accepting the court's offer of additional argument from the attorneys. Unlike in *Thompkins*, the trial court did not provide legally incorrect answers or instruction to the jury, which may have improperly influenced them. *Thompkins* is inapposite.

In reviewing this record, we cannot say the court's response to the jury's note was either in error or was prejudicial. Accordingly, appellant is not entitled to reversal of count 1.

## II. The Trial Court Did Not Abuse Its Discretion By Ordering Further Argument.

Appellant asserts the trial court prejudicially abused its discretion when it ordered further legal argument. He argues the jurors sought legal information, clarification of previous instructions, and further instruction. He maintains the court's decision violated his rights to a fair trial and due process guaranteed by the Sixth and Fourteenth Amendments.

### A. Standard of review.

Section 1093 establishes the order of proceedings at trial, including that the prosecutor and defense may argue the matter upon the close of evidence. (§ 1093, subd. (e).) The trial must proceed in the prescribed order "unless otherwise directed by the court." (§ 1093.) Section 1094 grants the trial court broad discretion to depart from the order set forth in section 1093. Section 1140 empowers the trial court to determine whether a reasonable probability exists a jury deadlock might be broken. (Cf. *People v. Miller* (1990) 50 Cal.3d 954, 994 [trial court has discretion to determine if a "reasonable probability of agreement" exists with jury]; *People v. Sheldon* (1989) 48 Cal.3d 935,

17.

959.)  "The court must exercise its power, however, without coercion of the jury, so as to avoid displacing the jury's independent judgment 'in favor of considerations of compromise and expediency.' [Citation.]"  (*People v. Miller, supra,* at p. 994.)

The California Rules of Court provide the following guidance to a trial court when a jury reaches a deadlock: "After a jury reports that it has reached an impasse in its deliberations, the trial judge may, in the presence of counsel, advise the jury of its duty to decide the case based on the evidence while keeping an open mind and talking about the evidence with each other. The judge should ask the jury if it has specific concerns which, if resolved, might assist the jury in reaching a verdict."  (Cal. Rules of Court, rule 2.1036(a).)  If the trial judge determines that further action might assist the jury, the court may: "(1) Give additional instructions; [¶] (2) Clarify previous instructions; [¶] (3) Permit attorneys to make additional closing arguments; or [¶] (4) Employ any combination of these measures."  (Cal. Rules of Court, rule 2.1036(b).)

"While rule 2.1036 does not state so expressly, it is apparent the trial court has discretion when choosing whether to resort to the tools provided and how to use those tools."  (*People v. Salazar* (2014) 227 Cal.App.4th 1078, 1088 (*Salazar*).)  "We review the trial court's exercise of discretion for an abuse of discretion."  (*Ibid.*)

### B.    Analysis.

Appellant argues the trial court prejudicially abused its discretion in ordering further arguments.  He asserts the jury was "confused and unclear" on the "paramount" legal issue of when kidnapping started with regard to movement, requiring further legal instruction.  He notes his trial counsel objected to the additional arguments, contending they violated section 1093, and appellant's rights to a fair trial and due process guaranteed by the Sixth and Fourteenth Amendments.

After appellant's trial counsel objected, the trial court indicated it would speak with the jury foreman "to get a further clarification on the issue."  The court also noted it would "tread this ground very lightly" about what it would ask regarding the jury's

18.

deliberations. The trial court did not order additional argument until first confirming with the foreman that the jury was at an impasse. The trial court noted that the jury requested the additional argument, and the court confirmed with the foreman that this issue was paramount to resolving the jury's "one remaining issue."

Because the jury requested the argument and was at an impasse regarding this one issue, the court was within its discretion to order additional argument pursuant to California Rules of Court, rule 2.1036. We cannot say the trial court abused its discretion in ordering the very additional argument which the jury requested after confirming an impasse. (*Salazar, supra,* 227 Cal.App.4th at p. 1089.)

In *Salazar, supra,* 227 Cal.App.4th 1078, the jury began deliberations and sent a note stating it was having trouble reaching a verdict on count 1, but wondered if it could rule on count 2. (*Id.* at p. 1083.) The trial court advised the jury it must reach a verdict on count 1 before deliberating on count 2, and it gave them an option of further closing arguments if they were at an impasse. (*Id.* at pp. 1084, 1089.) After continued deliberations of approximately one hour, the jury requested further argument regarding the believability of a particular witness. On appeal, this court held no error occurred because the jury was at an impasse and requested the additional argument. (*Id.* at p. 1089.) The *Salazar* court also noted the trial court acted within its right to control the proceedings when it preemptively informed the jury of its ability to hear further argument even before declaring an impasse. (*Id.* at p. 1088.)

Here, like in *Salazar*, the jury requested the additional argument after further deliberations proved futile. Similar to *Salazar*, the jury was at an impasse regarding this one issue. The court acted within its discretion to order additional argument. (Cal. Rules of Court, rule 2.1036.) It was not an abuse of discretion for the trial court to suggest additional argument even prior to the jury declaring an impasse. (*Salazar, supra,* 227

19.

Cal.App.4th at p. 1088.) The trial court acted well within its right to control the trial proceedings. (*Ibid.*)[13]

Moreover, as discussed in section I, appellant cannot establish any prejudice. He has not offered any real basis that the jury was actually confused, misinterpreted the law, or misinterpreted the jury instructions. Appellant's conviction on count 1 will not be reversed or modified.

## III. Defense Counsel Did Not Provide Ineffective Assistance.

Appellant contends his trial counsel provided ineffective assistance during the supplemental arguments, asserting she made a concession. He seeks reversal or modification of count 1.

### A. Background.

### 1. Defense counsel's comments during the initial closing arguments.

During the initial closing arguments, appellant's counsel stressed that the defense theme was "hell hath no fur[]y like a woman scorned." The defense argued C.Q. was mad, despite C.Q.'s trial testimony she was not upset, because the strange woman was in appellant's car. She asserted both C.Q. and C.A. were upset because they reasonably believed appellant was sleeping with the strange woman. Appellant's counsel noted neither C.Q. nor C.A. talked about the strange woman to the responding law enforcement officers, arguing the strange woman was the motivation for the allegations against appellant.

The defense argued C.A. was not in appellant's car when appellant returned to the friend's residence, emphasizing that law enforcement never saw C.A. exit appellant's

---

[13] Appellant argues *People v. Young* (2007) 156 Cal.App.4th 1165 (*Young*) is factually distinguishable, a case his trial counsel mentioned when objecting to further arguments. Respondent asserts *Young* establishes the trial court had the authority to permit additional argument. We need not resolve the parties' dispute regarding *Young* because we rely on *Salazar, supra,* 227 Cal.App.4th 1078.

20.

vehicle and it was not reasonable to believe C.A. was in his vehicle. The defense argued C.Q. and C.A. lied to bring charges against appellant, and their stories did not match and did not make sense. The defense emphasized after appellant was charged C.Q. went to Hernandez and Raya asking for $600 in exchange for C.A. dropping the charges, which C.Q. stated were false.

Appellant's counsel argued the jury should ignore appellant's admissions to police, asserting he was scared the police would hurt him if he did not state what they wanted to hear. She noted appellant's cultural background, emphasizing that difference was important to consider. The defense argued appellant admitted to an attempted rape to avoid a charge of rape.

Appellant's counsel asked the jury to listen to the recorded phone calls between appellant and C.Q. when he was in jail to hear her tone of voice, noting C.Q. did not sound like a mother angry at appellant for kidnapping her daughter and attempting rape.

### 2. Defense counsel's additional arguments.

After the court ordered additional arguments, appellant's counsel thanked the jury for their hard work and time. She then said the following:

> "Movement is not … you guys are probably overanalyzing it. If you believe what his Honor is saying, and that's where I believe you are headed, movement doesn't start -- it doesn't matter if -- I think I know where you guys are confused.

> "Is it when the car takes off, or is it somewhere during that drive?

> "It doesn't matter if it's at the beginning or during the drive as long as she doesn't want to be there and she doesn't want to go.

> "So it doesn't matter if it's when she got in or if it's during the drive. If she wakes up and she says, 'Hey, I don't want to go,' it doesn't matter. I think that's as simply put as I can put it.

> "I'm sorry. I'm emotional. But I do appreciate the time that you are spending.

21.

"I'd ask you that, based on the evidence that you saw, that you would not believe that she has [*sic*] said those things with respect to that."

## B.   Standard of review.

Under the federal and state constitutions, a criminal defendant is entitled to the assistance of counsel.  (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.)  The constitutional right is a guarantee "not to some bare assistance but rather to *effective* assistance."  (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  To prevail on a claim of ineffective assistance of counsel, a defendant must establish two criteria: (1) that counsel's performance fell below an objective standard of reasonable competence and (2) that he was thereby prejudiced.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)  The defendant has the burden of showing both deficient performance and resulting prejudice.  (*People v. Lucas* (1995) 12 Cal.4th 415, 436.)

An appellate court is to defer to counsel's reasonable tactical decisions, and there is a strong presumption that counsel's conduct falls within the range of reasonable professional assistance.  (*People v. Lucas, supra,* 12 Cal.4th at pp. 436-437.)  An appellate court will reverse the conviction "only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission."  (*People v. Fosselman* (1983) 33 Cal.3d 572, 581.)  In conducting this review, the appellate court considers whether the record contains any explanation for counsel's actions; if the record sheds no light on counsel's actions, the claim is not cognizable unless counsel was asked for an explanation and failed to provide one, or unless there could be no satisfactory explanation for the actions taken.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266; *People v. Kelly* (1992) 1 Cal.4th 495, 520.)

The right to effective assistance of counsel extends to closing arguments, the purpose of which is for counsel to sharpen and clarify the issues the jury must decide.  (*Yarborough v. Gentry* (2003) 540 U.S. 1, 5 (*Yarborough*); *Herring v. New York* (1975) 422 U.S. 853, 862.)  The decision of how to argue to the jury after the presentation of

evidence is inherently tactical, and judicial review of a defense attorney's summation is highly deferential. (*Yarborough, supra,* at p. 6; *People v. Freeman* (1994) 8 Cal.4th 450, 498.)

To prevail on a claim that counsel's concessions during closing argument constituted ineffective assistance, a defendant must overcome the strong presumption that counsel's actions were sound trial strategy under the circumstances prevailing at trial. (*People v. Freeman, supra,* 8 Cal.4th at p. 498.) Where the incriminating evidence was strong and counsel offered some other choice in the defendant's favor, concessions in closing argument do not constitute ineffective assistance. (*People v. Hart* (1999) 20 Cal.4th 546, 631.) "Reversals for ineffective assistance of counsel during closing argument rarely occur; when they do, it is due to an argument against the client which concedes guilt, withdraws a crucial defense, or relies on an illegal defense. [Citation.]" (*People v. Moore* (1988) 201 Cal.App.3d 51, 57.)

### C.   Analysis.

Appellant argues he was "constructively" denied the right to counsel when his trial attorney said that the movement "doesn't matter" during the additional arguments. Appellant contends his counsel's statement did not hold the prosecution to its burden of proof, lessened the prosecution's burden of persuasion, failed to subject the prosecution's case to meaningful adversarial testing, caused a breakdown in the adversarial system, and affirmatively aided the prosecution's efforts to persuade the jury there was no reasonable doubt. Appellant relies on *Haynes v. Cain* (5th Cir. 2001) 272 F.3d 757 (*Haynes*); *United States v. Swanson* (9th Cir. 1991) 943 F.2d 1070 (*Swanson*); *Francis v. Spraggins* (11th Cir. 1983) 720 F.2d 1190, cert. den. (1985) 470 U.S. 1059 (*Francis*); *State v. Harrington* (Super.Ct.App.Div. 1998) 310 N.J.Super. 272 (*Harrington*); and *People v. Lafayette*

*Woods* (1986) 151 Ill.App. 3d 687 (*Woods*) to support these arguments.**14** We do not find these authorities persuasive.

In *Haynes, supra,* 272 F.3d 757, the defense attorney made an explicit concession of his client's guilt of a lesser included offense in opening and closing argument, which the appellate court held caused a constructive denial of counsel and inappropriately lessened the prosecution's burden. (*Id.* at p. 764.)

In *Francis, supra,* 720 F.2d 1190, the defense attorney conceded his client's guilt during arguments to the jury despite the defendant testifying he lacked any knowledge of participating in the crimes and denied making exculpatory statements to the police. The defense attorney expressed his belief to the jury that the defendant had committed the charged murder and did not argue for acquittal due to insanity. The appellate court found that defense counsel's concession of guilt was "irrational" and caused ineffective assistance at trial. (*Id.* at p. 1194.)

In *Harrington, supra,* 310 N.J.Super. 272, defense counsel expressly conceded that his client committed the underlying robbery supporting a felony murder charge. Later in his comments pertaining to the felony murder doctrine, defense counsel attempted to retract his earlier concession. (*Id.* at pp. 281-282.) The prosecutor used the concession as the centerpiece of his argument that the defendant was guilty of felony murder. (*Id.* at p. 282.) The appellate court found a deprivation of effective assistance of counsel because defense counsel "assured" a conviction for felony murder based on his concession, which lacked any tactical or strategic advantage. (*Ibid.*)

In *Woods, supra,* 151 Ill.App. 3d 687, defense counsel made statements to the jury which seemed to admit that his clients were guilty of theft. The appellate court noted the

---

**14** We note that appellant's cited authorities are not binding on this court. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 490 [out-of-state decisions are not binding but may be persuasive]; *People v. Avena, supra,* 13 Cal.4th at p. 431 [a lower federal court decision is not binding].)

apparent concession could have been designed to avoid conviction of more serious offenses, but defense counsel's concession was "completely contradictory" to the defendants' theory of innocence and went against the defense position from the start of trial. (*Id.* at p. 693.) The appellate court noted that defense counsel destroyed whatever credibility his clients had by contradicting their testimony. (*Ibid.*)

Finally, in *Swanson, supra,* 943 F.2d 1070, defense counsel conceded that the government had met its burden of proof. The appellate court found that the concession "lessened the Government's burden of persuading the jury" and caused a "breakdown in our adversarial system." (*Id.* at p. 1074.)

Here, unlike each of appellant's authorities, appellant's trial counsel never conceded appellant's guilt regarding any of the charges against him in either the initial or the supplemental closing arguments. Unlike appellant's cited authorities, his trial counsel never conceded that the government had met its burden of proof. To the contrary, appellant's counsel consistently supported her client's testimony, arguing that both C.Q. and C.A. were lying, C.A. could not have been in appellant's vehicle as alleged, and C.Q. planted appellant's semen on her daughter's leg. During the supplemental argument, appellant's counsel asked the jury to disbelieve that C.A. made any statements to appellant about not wanting to be in his vehicle. Defense counsel's supplemental argument was consistent with her initial arguments and continued to support appellant's testimony that he never formed intent to kidnap C.A. and she was not in his vehicle when he drove away. Appellant's cited authorities are distinguishable and do not support a finding of ineffective assistance of counsel in this present matter.

Appellant, however, argues that his counsel was wrong as a matter of law to "concede" it did not matter whether C.A. did not want to ride with appellant when she initially entered his vehicle or during the drive. Appellant contends it is an "open question" whether the necessary intent must precede all movement of the victim or only one phase of movement involving an independently adequate asportation, citing only the

criminal jury instructions. He asserts that when the "movement" began was "paramount" and a "center piece" and the jury could have found him not guilty if they believed he did not intend to commit rape at the outset of all movement. In the alternative, he argues the jury could have concluded he did not kidnap C.A. because she voluntarily entered his vehicle without the use of force or fear, or his voluntary intoxication negated his specific intent. He maintains that the jury needed to know when the act of movement began in order to determine whether force or fear was used, and whether any movement was a substantial distance.

Although his defense counsel could have argued some or all of the points appellant raises on appeal, it is not our role to determine if different approaches were available, but, rather, whether the record discloses that defense counsel had no rational tactical reason for the approach she took. (*People v. Fosselman, supra,* 33 Cal.3d at p. 581.) Even when counsel focuses on one issue to the exclusion of others, there remains a strong presumption that he or she did so for tactical reasons and not "through sheer neglect." (*Yarborough, supra,* 540 U.S. at p. 8.) This presumption is particularly strong where an appellant, like here, bases his ineffective assistance claim only on the trial record, "creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.' [Citation.]" (*Ibid.*)

Here, the defense attempted to make "movement" a non-issue. According to the defense, appellant never formed any intent to rape, and C.A. was not in appellant's vehicle when he drove away from C.Q. The defense theory was that C.Q. and C.A. lied about the allegations because appellant had the strange woman with him. During the supplemental argument, appellant's counsel emphasized that movement did not matter and asked the jury not to believe C.A.'s testimony. The record establishes that appellant's counsel had a tactical reason for her approach and did not act "through sheer neglect." (*Yarborough, supra,* 540 U.S. at p. 8; see *People v. Mendoza Tello, supra,* 15

Cal.4th at p. 266 [appellate court considers whether record contains any explanation for counsel's actions].)

Even if defense counsel's statements during the supplemental argument could be construed as a concession, appellant still cannot overcome the strong presumption that her actions were sound trial strategy under the circumstances prevailing at trial. (*People v. Freeman, supra,* 8 Cal.4th at p. 498.) The incriminating evidence against appellant was strong but his counsel offered some other choice in his favor. As such, any concession that defense counsel might have made during the supplemental closing argument did not constitute ineffective assistance. (*People v. Hart, supra,* 20 Cal.4th at p. 631; *People v. Moore, supra,* 201 Cal.App.3d at p. 57 [reversal for ineffective assistance stemming from closing argument is rarely granted and occurs when counsel concedes guilt, withdraws a crucial defense, or relies on an illegal defense].)

Appellant has not met his burden of establishing that his trial counsel rendered deficient performance.[15] (*Strickland, supra,* 466 U.S. at p. 687.)

## IV. The Abstract of Judgment Contains a Clerical Error.

Regarding count 2, the jury convicted appellant of assault with intent to rape (§§ 220, 261, subd. (a)(2)). However, the abstract of judgment reflects this conviction under sections "220/26(A)(2)." On its own motion, an appellate court with jurisdiction of a case may order correction of clerical errors contained in the abstract of judgment. (*People v. Mitchell, supra,* 26 Cal.4th at pp. 186-187.) This matter is remanded to the trial court to correct the abstract of judgment to reflect conviction on count 2 under sections 220 and 261, subdivision (a)(2).

---

[15] Because appellant cannot establish that his counsel rendered deficient performance, we do not address his arguments that his counsel's actions caused him prejudice.

# **DISPOSITION**

This matter is remanded to the trial court to correct the abstract of judgment to reflect conviction on count 2 under sections 220 and 261, subdivision (a)(2). The trial court shall then forward the amended abstract of judgment to the appropriate authorities. The judgment is otherwise affirmed.

_____
LEVY, Acting P.J.

WE CONCUR

_____
DETJEN, J.

_____
SMITH, J.